Cora E. ARGENIO, Appellant (at 166),

v.

Chad FENTON, Daniel Fenton,
and Renee Fenton.

Cora E. ARGENIO, Appellant (at 131),

v.

Chad FENTON, Daniel Fenton, and
Renee Fenton, Bradford County
Children & Youth.

Superior Court of Pennsylvania.

Argued June 19, 1997.
Filed Dec. 15, 1997.

Howard M. Spizer, Scranton, for appellant.

Susan E. Hartley, Athens, for Chad Fenton, appellee.

Alida O'Hara, Honesdale, for Daniel and Renee Fenton, appellees.

Before TAMILIA and HUDOCK, JJ., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

This is a consolidated appeal from two orders denying appellant *in loco parentis* status and partial custody and/or visitation rights to her granddaughter. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Appellant filed a complaint for custody alleging *in loco parentis* status of her granddaughter and/or partial custody and visitation rights following the death of her daughter from a one-vehicle accident. Chad Fenton, appellee and natural father to the

minor child, resumed legal custody of his daughter but gave physical custody of the child to his brother and sister-in-law, Daniel and Renee Fenton. Although a stipulation had been reached between the parties concerning appellant's visitation of the minor child at the Fenton home, tensions erupted and appellees filed preliminary objections to appellant's custody complaint. Following a hearing before the trial court, the Honorable Jeffrey A. Smith, President Judge of the Court of Common Pleas of Bradford County entered an order on January 17, 1995 dismissing that portion of appellant's complaint seeking custody of her granddaughter. Appellant filed a notice of appeal to this court on January 26, 1995.

Daniel and Renee Fenton filed a petition for a stay on March 10, 1995 and hearings on the balance of appellant's custody complaint were conducted in March, August, and November of 1995. Appellant's visitation rights were suspended during this time period. On January 10, 1996 the Honorable Jeffrey A. Smith entered an order denying appellant's request for partial custody and/or visitation to her granddaughter. Appellant filed her notice of appeal to this order on February 2, 1996 and on November 7, 1996 by *per curiam* order we consolidated appellant's appeals pursuant to her petition to do so.

Appellant raises six (6) issues for our review:

1. Whether the maternal grandmother has standing to seek custody as against the natural father and a third party who has actual physical custody of the minor child and whether the maternal grandmother stands *"in loco parentis"* with respect to her minor grandchild in a situation where the natural mother is deceased and the natural father has placed the minor child in the actual physical custody of his brother and sister-in-law.

2. Whether appellees, Daniel Fenton and Renee Fenton, are "parents" within the meaning of the Grandparent's Visitation Act in a situation where the natural mother is deceased and the natural father had placed his child in the physical custody of his brother and sister-in-law.

3. Whether the trial court may deny any visitation or partial custody under the Grandparent's Visitation Act to the maternal grandmother of the minor child so long as she is pursuing her rights to custody.

4. Whether partial custody or visitation rights would be in the best interests of the minor child.

5. Whether partial custody or visitation rights for the maternal grandmother would interfere with the parent-child relationship.

6. Whether the trial court erred in refusing to permit testimony regarding Norman Fleet who had been the child's caretaker on a daily basis which would be relevant to the welfare and best interest of the child.

Appellant's brief at 4. In reference to appellant's first order on appeal denying her *in loco parentis* status to her grandchild the trial court sustained appellees' preliminary objections in the nature of a demurrer.[1] It is well established in this Commonwealth that:

[w]hen reviewing an order granting preliminary objections in the nature of a demurrer, an appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer.

*Jackson v. Garland,* 424 Pa.Super. 378, 381, 622 A.2d 969 970 (1993) (citations omitted). Instantly, appellant argues that the trial court erred when it denied her *in loco parentis* standing to sue for custody of her minor grandchild. Appellant recites a lengthy and exhaustive factual history of her daughter, a sixteen (16) year old, and grandchild living in her household for the first year of the minor child's life. Appellant vehemently argues that she cared for the child on a daily basis, both in the presence and the absence of her daughter. Appellant avers that she ar-

---

1. This order is docketed at No. 166 Harrisburg 1995.

ranged for and instructed the child's babysitter while her daughter attended school and/or was away from the child for general purposes. Thus, appellant submits that she stood *in loco parentis* to her granddaughter.

 Disputes involving custody of a minor child, other than those involving a parent against another parent, are considered to be "third party" disputes. *Van Coutren v. Wells*, 430 Pa.Super. 212, 633 A.2d 1214 (1993). As such, "[a]bsent a prima facie right to custody, a third party lacks standing to seek custody as against the natural parent." *Id.,* 430 Pa.Super. at 215, 633 A.2d at 1215–16 *quoting Rosado v. Diaz*, 425 Pa.Super. 155, 158, 624 A.2d 193, 195 (1993). However, an exception to this rule, other than a child being declared dependent, is for the third party to prove that she stands *in loco parentis* to the child. The court in *Van Coutren* reiterated the meaning and legal implication of *in loco parentis* when it held:

> [t]he phrase 'in loco parentis' refers to a person who puts himself[/herself] in the situation of assuming the obligation incident to the parental relationship without going through the formality of a legal adoption. The status of 'in loco parentis' embodies two ideas: first, the assumption of a parental status, and second, the discharge of parental duties.

*Id.,* 430 Pa.Super. at 215, 633 A.2d at 1216 (citations omitted). Although we recognize and applaud appellant's participation in the care-taking of her granddaughter, our review of the record before us and the arguments of the parties brings us to the same conclusion as that of the trial court that "[a]ppellant proved that she acted as no more than a care-taker, in effect, a baby-sitter for the child, albeit a frequent caretaker. That is not enough to confer standing." Trial court opinion at 3. We agree with the trial court's characterization that appellant's daughter's acts of leaving her child with appellant "were appropriate and were consistent with that which would be expected of a young, unwed mother who was trying to obtain an education, be productive, and continue to develop socially. Fortunately, she had a mother, [a]ppellant, who was willing and able to help her with child care." *Id.* at 2 n. 1. As we find nothing further in the record we acquiesce with the trial court's holding that "[t]he evidence in this case can in no way be stretched so far as to reach the conclusion that [a]ppellant acted as one who had informally adopted the child or that she intended to be bound to the legal duties and obligations of a parent." *Id.* at 4. Accordingly, appellant's claim of standing *in loco parentis* to her granddaughter is baseless and the trial court's order sustaining appellees' preliminary objections in the nature of a demurrer is affirmed.[2]

 Appellant's remaining issues deal with her request for partial custody and/or visitation of her grandchild.[3] Our review of the record reveals that the trial court did not write an opinion as to why he denied appellant any rights to see her granddaughter. The trial court simply stated in its January 10, 1996 order that its explanation on the record at the November 9, 1995 hearing should be sufficient as to its denial of appellant's rights. However, a certified copy of the closing remarks of the November 9th hearing has not been supplied to this court. As we are limited to only those facts that have been certified in the record on appeal, we are unable to make an assessment of the

**2.** We are cognizant of appellant's reliance on *Rowles v. Rowles*, 542 Pa. 443, 668 A.2d 126 (1995) for the proposition that the Supreme Court "has abandoned the presumption that a parent has a prima facie right to custody as against third parties [and substituted it with the axiom] that custody [should be] determined by a preponderance of the evidence, weighing parenthood as a strong factor for consideration with the ultimate concern being what is in the child's best interests" Appellant's brief at 35. As *Rowles* is a plurality decision on this specific issue of law, we are not bound to follow it. *See Mollander v. Chiodo*, 450 Pa.Super. 247, 675 A.2d 753 (1996)(held that Superior Court was not bound

to follow *Rowles* nor would the application of *Rowles* change the outcome of the case). Moreover, it appears to this court that appellant is confusing the concepts of "standing" with the "burden of proof" required in custody disputes. Clearly, one must have standing in a matter before attempting to meet the requisite burden of proof. *See Campbell v. Campbell*, 448 Pa.Super. 640, 672 A.2d 835 (1996)(discussion of standing and burden of proof issues in a third party custody suit).

**3.** This order is docketed at No. 131 Harrisburg 1996.

trial court's decision concerning appellant's rights of partial custody and visitation. *Commonwealth v. Osellanie*, 408 Pa.Super. 472, 597 A.2d 130 (1991).[4]

The applicable statute, as recognized by the parties and the trial court, providing for appellant's partial custody and/or visitation rights to her granddaughter is 23 Pa.C.S.A. § 5311. It provides:

> [i]f a parent of an unmarried child is deceased, the parents or grandparents of the deceased parent may be granted reasonable partial custody or visitation rights, or both, to the unmarried child by the court upon a finding that partial custody or visitation rights, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application.

*Id.* Further this court has held that the paramount concern in deciding issues of custody and visitation, even in cases involving the rights of grandparents, is the best interest of the child. *Norris v. Tearney*, 422 Pa.Super. 246, 619 A.2d 339 (1993). Also, "[i]n a grandparent visitation case, the grandparent has the burden to prove that it is in the child's best interest to have 'some time' with the grandparent." *Id.*, 422 Pa.Super. at 249, 619 A.2d at 340 citing *Bishop v. Piller*, 399 Pa.Super. 52, 56, 581 A.2d 670, 672 (1990), *aff'd* 536 Pa. 41, 637 A.2d 976 (1994).

Instantly, appellant argues that the trial court erred in denying her any visitation with her granddaughter. Appellant also complains that because appellees, Renee and Daniel Fenton, are not the parents of the minor child in question, but merely her physical custodians, she is not clear as to what weight the trial court placed on their "status" within the meaning of the statute, 23 Pa. C.S.A. § 5311. Our review of the voluminous record in this case, surely discloses a variation of the roles assumed in the rearing of this young child. Although appellees, Renee and Daniel Fenton, have physical custody of this child, from the record before us, they do not have legal custody. Also, we are not clear on what role, if any, appellee, Chad Fenton, has in his daughter's life at this time. Finally, we are well aware of the accusations made by the parties in this matter regarding the care of this child, as well as her deceased mother, and the history of the parties' relationships, particularly with this child. Because the trial court has not supplied us with a comprehensive opinion as why it denied appellant partial custody and/or visitation rights to her granddaughter and we do not have a certified record of the trial court's closing remarks on the matter, we find it necessary to reverse the trial court on this issue and remand for hearings to determine if it is, and to what extent, in the best interests of this child to have contact with appellant. *See* 23 Pa.C.S.A. § 5311, *Norris v. Tearney, supra.*

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

---

**4.** Appellant has provided in her Reproduced Record a copy of the trial court's comments at the close of the hearing that day. Essentially, the trial court denied visitation at that time due to the tension and animosity that had arisen between the parties. Reproduced Record at 682(a)–689(a). The trial court believed that if the parties made a concerted effort toward healing their relationship that the minor child would be the beneficiary. *Id.* Also, the trial court acknowledged that appellant's appeal of her custody claim was a contributing impediment to the parties' desire and ability to resolve their differences. *Id.* Nevertheless, as appellant has abrogated her responsibility of providing a complete and comprehensive record to the reviewing court, her reproduction of the closing remarks cannot be substituted for the certified transcription. *Commonwealth v. Feflie*, 398 Pa.Super. 622, 581 A.2d 636 (1990); *Gemini Equipment v. Pennsy Supply*, 407 Pa.Super. 404, 595 A.2d 1211 (1991).