J-S08044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| L.L.D., D.A.L., AND E.D., | |
| Appellees | No. 2810 EDA 2014 |

Appeal from the Order entered July 15, 2014,
in the Court of Common Pleas of Montgomery County,
Civil Division, at No(s): 2014-17859

BEFORE:  DONOHUE, WECHT, AND JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                 **FILED MARCH 30, 2015**

Appellant, C.B., ("Plaintiff") appeals from the order entered on July 15, 2014, finding that she lacked third-party standing to file a custody complaint, against L.D. ("Mother"), D.L. ("Father"), and E.D. (hereinafter "Maternal Grandfather"), regarding Mother's and Father's son, I.L. ("Child") (born in August of 2010), and dismissing C.B.'s complaint for custody and petition for special relief under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321 to 5340.  The order also dismissed, as moot, the petition to intervene filed by Maternal Grandfather.  We affirm.

The trial court set forth the factual background and procedural history of this appeal as follows.

> Defendant/Appellee  [L.L.D.]  (hereinafter  "Mother"),  and
> Defendant/Appellee  [D.D.L.]  ("hereinafter  "Father")  are  the
> parents of I.J.L[.], [born in August of 2010] (hereinafter "the

child"). On June 16, 2014, Plaintiff/Appellant [C.B.] (hereinafter "Plaintiff"), a third party, filed a Complaint for Legal and Physical Custody of the child against Mother and Father. At the time the petition was filed, Mother and Father lived in Miami, Florida. On June 23, 2014, Plaintiff filed an Emergency Motion for Special Relief against Mother and Father, and added the child's maternal grandfather, [E.D.] (hereinafter "Maternal Grandfather"), as a third defendant. On June 25, 2014, the court scheduled a hearing on the issue of standing only for July 2, 2014. On July 1, 2014, Maternal Grandfather filed a Petition to Intervene in Custody.

Trial Court Opinion, 10/16/14, at 1.

On July 2, 2014, the trial court held a hearing on the issue of C.B.'s standing in the custody matter. C.B. appeared, along with her counsel, Attorney Enrico Paganelli. E.D. appeared *pro se*. Mother and Father did not appear, nor did any counsel appear on their behalf.

The trial court found that the witnesses testified as follows.

At the July 2, 2014 hearing, Plaintiff testified that she met Maternal Grandfather "at the Borgata in Atlantic City at the end of May of 2012 . . . and we started dating." N.T. July 2, 2014 at 8. Plaintiff testified that they moved in together at her residence ". . . by the end of July, the beginning of August of that year. . ." N.T. at 8. Plaintiff testified that when she met Maternal Grandfather, the child was living with his [m]other in Miami, Florida.

Plaintiff testified that in June, 2013, Maternal Grandfather went to Miami to see Mother and the child. On June 24, 2013, Maternal Grandfather brought the child back with him from Miami to Pennsylvania. N.T. at 16-17. Plaintiff entered into evidence a letter from Mother which stated that she was giving "temporary custody" of the child to Maternal Grandfather, who would return the child to Mother in Miami once Mother found a place to live and obtained a job.[ ] Trial Exhibit P-2. Plaintiff testified that while the child lived with her and Maternal Grandfather, she "bought him clothes, bought him toys. . . spent a couple of days with him. . ." N.T. at 20. Plaintiff testified that

- 2 -

she put the child was [sic] in summer camp, hired a babysitter to pick him up after school, and placed him in daycare. N.T. at 20-21. Plaintiff also testified that she paid for the child to have health insurance in Pennsylvania. N.T. at 27. Plaintiff testified that while the child was living with her and Maternal Grandfather, Mother "reached out" to the child ". . . if it wasn't every other day sometimes it was every day." N.T. at 31. When asked by counsel if Mother consented to "Well, she consented that [Maternal Grandfather] could bring him. And she knew that her father lived with me . . . so, yes." N.T. at 32.

On cross-examination, Plaintiff testified that she and Maternal Grandfather shared in the daily care of the child, and she was not the only one who cared for the child while he was in Pennsylvania. N.T. at 43-44. Plaintiff testified that "the intent originally was that the child was going to stay until [Mother] got her life together . . . originally we thought maybe that would take a couple of months. Until it went on, we realized the problem was bigger than what was originally anticipated. So the summer vacation became a year." N.T. at 47.

During redirect examination, Maternal Grandfather stated to Plaintiff[,] "I was asked to take care of the grandchild, not you. . ." N.T. at 49. On his direct examination, Maternal Grandfather testified that when he went to Miami to visit Mother and the child in June, 2013, he stated to Mother that he could help her by taking the child back to Pennsylvania for a "summer vacation." N.T. at 63. Maternal Grandfather testified that "on many occasions," Plaintiff told him that she wanted a child, "and I told her look, if you want a kid, you might want to adopt one, you can't keep my daughter's son." N.T. at 65.

Maternal Grandfather testified that, eventually, Mother intended to come and get the child and take him back to Miami ". . . [Plaintiff] kept telling her no, you can't come to my house." N.T. at 71. Maternal Grandfather testified that Plaintiff went behind his back and behind Mother's back "and filed for custody without telling us" in June, 2014. N.T. at 71. When asked by the court if Plaintiff was responsible for all of the child's care, Maternal Grandfather replied: ". . . I had everything to do with his care. I was living there, I was working, I was buying food. I was bathing him, taking him to the doctor's, taking him to the daycare . . . doing everything. . ." N.T. at 79.

- 3 -

Trial Court Opinion, 10/16/14, at 1-5.

On July 15, 2014, the trial court entered an order finding that C.B. lacked third-party standing to participate in custody proceedings, and dismissed her complaint for custody and petition for special relief. The court further dismissed as moot the petition to intervene filed by Maternal Grandfather, as his petition to intervene stated, "I only want [Mother] to have custody," and C.B.'s complaint had been dismissed. **See** Petition to Intervene in Custody at 4. On July 18, 2014, C.B. filed a motion for reconsideration of the July 15, 2014 order. The trial court denied reconsideration on July 30, 2014, and issued Pa.R.C.P. 236 notice of the order on August 1, 2014.

On August 13, 2014, C.B. timely filed a notice of appeal from the July 15, 2014 order, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, C.B. raises one issue, as follows:

Whether the trial court erred in failing to grant Appellant *in loco parentis* standing to sue for legal and physical custody of the subject minor child pursuant to 23 Pa.C.S. § 5324(b)?

C.B.'s Brief, at 5.

A trial court's determination regarding *in loco parentis* standing will not be disturbed, absent an abuse of discretion. **Butler v. Illes**, 747 A.2d 943, 944 (Pa. Super. 2000).

In custody cases, our standard of review is as follows:

- 4 -

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

This Court has stated: "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted).

C.B. argues that the trial court erred in ruling that she lacked standing, *in loco parentis*, to seek custody of Child. C.B. asserts that the court failed to recognize Mother's consent to her assumption of ongoing parental duties, both by way of a letter from Mother, and Mother's action over the course of the year that Child lived with C.B. C.B. also contends that the trial court failed to consider discrepancies in Maternal Grandfather's testimony, and relied too heavily on assertions that he made without any

- 5 -

evidence or proof. She seeks for this Court to vacate the trial court's order, and remand the matter to the trial court for further proceedings.

Pursuant to section 5324 of the Act, "A person who stands *in loco parentis* to the child" may file an action for any form of physical or legal custody. In ***Peters v. Costello***, 586 Pa. 102, 891 A.2d 705 (2005), our Supreme Court outlined the relevant principles as follows:

> The term *in loco parentis* literally means "in the place of a parent." *Black's Law Dictionary* (7th Ed. 1991), 791.
>
>> The phrase "*in loco parentis*" refers to a person who puts oneself [sic] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. . . . The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child.

***Peters v. Costello***, 586 Pa. at 111, 891 A.2d at 710 (citation and footnote omitted).

This Court has stated that a third party cannot place himself or herself *in loco parentis* status in defiance of the parents' wishes, and the parent/child relationship. ***Gradwell v. Strausser***, 610 A.2d 999, 1003 (Pa. Super. 1992). ***See E.W. v. T.S.***, 916 A.2d 1197, 1205 (Pa. Super. 2007) (stating, "the law provides that *in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of the wishes of a parent"). The frequency of a caretaker's services does not confer *in loco*

*parentis* status. ***Argenio v. Fenton***, 703 A.2d 1042, 1044 (Pa. Super.

1997) (holding that grandmother's serving as child's frequent caretaker was

insufficient to confer on grandmother standing to file custody dispute against

child's birth father).

Here, the trial court found as follows.

> Based on the evidence presented at the July 2, 2014 hearing, Plaintiff did not prove that she stands "in loco parentis" to the child. Plaintiff did not "live with the child and the natural parent in a family setting" and did not develop "a relationship with the child as a result of the participation and acquiescence of the natural parent." ***Morgan v. Weiser***, 923 A.2d 1183 (2007). Plaintiff was the girlfriend of Maternal Grandfather at the time when the child came to temporarily live with Maternal Grandfather in Pennsylvania. There was no evidence that Mother, or for that matter Father, consented to Plaintiff having a parental role in the child's life. In fact, Maternal Grandfather testified that[,] while the child was in Pennsylvania, Mother "repeatedly called me and said Dad, why doesn't [Plaintiff] let me come visit my son." N.T. at 64. Plaintiff herself testified that she was worried what would happen when Mother told the child's [f]ather that Plaintiff had filed for custody. The evidence does not support a finding that Plaintiff developed a relationship with the child with the consent and support of either Mother or Father. As previously stated, Plaintiff cannot stand in loco parentis to the child in defiance of the natural parent's wishes and the parent/child relationship.
>
> Maternal Grandfather testified that the child's stay in Pennsylvania was temporary until Mother could find a job and a place to live, and was not intended to be a permanent transfer of custody of the child to anyone. Furthermore, during the child's stay in Pennsylvania, Plaintiff was not the sole caretaker of the child. Maternal Grandfather testified that he provided for the day[-]to[-]day care of the child along with Plaintiff. There was no evidence that Plaintiff solely assumed the obligation incident to the parental relationship without "going through the formality of a legal adoption". ***D.G. and D.G. v. D.B. and G.V.***, 91 A.3d 706, [708 (Pa. Super. 2014)].

Plaintiff is not related to the child either through blood or marriage. Her only status was as a girlfriend to Maternal Grandfather, and[,] in fact, Plaintiff testified that as of August 2013, she was "basically just co-habitating" with Maternal Grandfather. At the time of the hearing, as Maternal Grandfather stated in his closing argument, she was "just an ex-girlfriend." N.T. at 98.

There was no evidence presented at the hearing that Plaintiff stands in loco parentis to the child.

Trial Court Opinion, 10/16/14, at 7-8.

The trial court found that Mother and Father had not consented to C.B. having a parental role in Child's life, and that the actions of Mother preclude C.B. from attaining *in loco parentis* status. While C.B. argues that the trial court placed excessive weight on the testimony of Maternal Grandfather in finding the lack of consent to C.B. having a parental role in Child's life, we find that there was competent evidence in the record to support the trial court's credibility and weight determinations. Thus, we will not disturb them. **C.R.F.**, at 443. Accordingly, we find that the trial court did not abuse its discretion in denying C.B. third-party standing, and dismissing her complaint for custody and petition for special relief. **See Gradwell**; and **Argenio**, **supra**.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2015