J-S75015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| L.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.W. | : | No. 959 WDA 2017 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.L.W. AND S.J.W. | : | |

Appeal from the Order May 26, 2017
In the Court of Common Pleas of Jefferson County
Civil Division at No(s): 1100-2007-CD

BEFORE: SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED JANUARY 05, 2018**

Appellant, L.M. ("Mother"), appeals from the May 26, 2017 custody order that made final the January 4, 2017 order granting intervenors, L.L.W. and S.J.W.") (collectively, "Grandparents" or "Intervenors"), standing to pursue custody of Mother's daughter ("Child"), under the doctrine of *in loco parentis*.[1] We affirm.

---

[1] An order granting a petition to intervene in a custody action is interlocutory and not an appealable final order under Rule 341(b). **Beltran v. Piersody**, 748 A.2d 715 (Pa. Super. 2000); **see also K.W. v. S.L.**, 157 A.3d 498, 502 (Pa. Super. 2017) ("Father concedes that the [order granting
*(Footnote Continued Next Page)*

Mother and D.W. ("Father"), are the natural parents of Child, born in October of 2006. Mother and Father were never married and separated shortly after Child's birth. In December of 2007, Father filed a petition for custody, seeking shared physical custody of Child. On November 17, 2008, the parties entered into a consent agreement, which awarded Mother primary physical custody of Child and granted Father periods of partial custody. In May of 2009, Father petitioned the court for additional periods of physical custody with Child. Again, the parties reached an agreement and entered into a consent order on August 28, 2009, expanding Father's periods of physical custody.

In August of 2010, Father filed a petition for special relief seeking primary custody of Child. In his petition, Father alleged that Mother was living with a sex offender.[2] By consent of the parties, primary physical custody of Child was transferred to Father, with periods of visitation

---

*(Footnote Continued)* _____

standing *in loco parentis*] is not a final order pursuant to Pa.R.A.P. 341(b)"). Thus, the interlocutory January 4, 2017 order was not final and appealable until the entry of the final custody order on May 26, 2017. **See In re Bridgeport Fire Litigation**, 51 A.3d 224, 229 (Pa. Super. 2012) ("Once an appeal is filed from a final order, all prior interlocutory orders become reviewable."). Mother filed a timely appeal from the May 26, 2017 order, and therefore, this appeal from the January 4, 2017 order is properly before our Court.

[2] Mother alleges that the sexual abuse allegations against her then live-in boyfriend were unfounded.

designated for Mother. For approximately the next two years, Child resided primarily with Father in the home of Grandparents.

In February of 2012, Mother filed a petition for modification of custody. A hearing was held and on June 15, 2012, the trial court awarded Mother and Father shared physical and legal custody of Child pursuant to a week on/week off schedule. Although Father was awarded shared physical custody, the record reflects that Child spent all of Father's custodial time with Grandparents.[3]

The parties operated under this agreement until October 13, 2016, when Mother filed an emergency petition for special relief and petition to modify custody. In her emergency petition, Mother asserted that Father's three other children[4] were removed from his home by Clearfield County Children and Youth Services. Petition for Emergency Custody, 10/13/16, at unnumbered 1. Mother averred that primary custody of Child should be transferred to her because she had "grave concerns" for the welfare of Child, knowing that Clearfield County Children and Youth Services found sufficient grounds to remove Father's other children from his care. *Id.* The trial court granted the emergency petition, awarded Mother temporary physical and

_____

[3] At some point prior to the award of shared physical custody, Father moved out of Grandparents' home and into his own home. The record reveals, however, that Child continued to reside with Grandparents.

[4] Father is now married and has three children with his wife.

- 3 -

legal custody, and scheduled a hearing on Mother's petition for primary custody.

On November 8, 2016, Grandparents filed a petition to intervene, wherein they requested permission to participate in Mother's custody hearing. Grandparents invoked 23 Pa.C.S. § 5324, which enumerates individuals who may have standing to pursue physical or legal custody of a child, as the basis to pursue legal and physical custody of Child. Grandparents asserted that Child "ha[d] been in the care of [Grandparents] seven (7) days every two (2) weeks during her entire life." Petition to Intervene/Emergency Ex Parte Custody Complaint, 11/8/16, at unnumbered 2. Essentially, Grandparents asserted that they have stood *in loco parentis* to Child since her birth. The trial court scheduled a hearing on Grandparents' petition for January 3, 2017.

At the January 3, 2017 hearing, Grandparents and Mother testified. Although Mother testified that she never gave express permission to Grandparents to care for Child, she admitted that while Child was in their care, Grandparents attended to Child's daily physical, emotional, and financial needs. N.T., 1/3/17, at 36, 42-43. In an order filed the next day, January 4, 2017, the trial court granted Grandparents' petition to intervene and ordered Grandparents to file a pretrial statement in anticipation of the custody hearing on Mother's petition for modification of custody.

On April 20, 2017, the trial court held a custody trial on Mother's petition. Mother testified on her own behalf and presented the testimony of maternal aunt, and the testimony of Child's therapist. Grandparents testified and presented the testimony of Nicole McCauley, a therapist at Community County Services; a friend of Grandfather's; and a member of Grandparents' church. Father also testified on his own behalf and on behalf of Grandparents. Finally, the trial court conducted an *in camera* interview with Child.

On May 26, 2017, the trial court entered a final order and opinion awarding Mother and Grandparents shared legal and physical custody of Child. Father was awarded undesignated periods of physical custody to be exercised during Grandparents' custody. Mother filed a timely appeal. Both Mother and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Mother raises one issue for this Court's consideration: "Did the lower court abuse its discretion and err as a matter of law in finding that Intervenors have standing under *in loco parentis* status in the [c]ustody action or under any other statute under 23 Pa.C.S.[] § 5321 et. seq.?" Mother's Brief at 5.[5] Mother argues that the trial court erred in concluding

_____

[5] We note that this is the only issue Mother raised in her concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and in her statement of questions involved in her brief. Accordingly, Mother has challenged only the trial court's order granting *in loco parentis* standing to Grandparents. Mother has not appealed the order that ultimately awarded

*(Footnote Continued Next Page)*

that Grandparents stood *in loco parentis* to Child and that, absent such designation, Grandparents cannot establish the statutory grounds for standing to pursue custody of Child. For the following reasons, we disagree.

We review the trial court's determination of standing *de novo*, and our scope of review is plenary. *K.W. v. S.L.*, 157 A.3d 498, 504 (Pa. Super. 2017). The relevant portion of the Child Custody Law, 23 Pa.C.S. §§ 5321 *et seq.*, provides as follows:

> The following individuals may file an action under this chapter for any form of physical custody or legal custody:
>
> (1) A parent of the child.
>
> (2) A person who stands in loco parentis to the child.
>
> (3) A grandparent of the child who is not in loco parentis to the child:
>
>> (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
>>
>> (ii) who assumes or is willing to assume responsibility for the child; and

(Footnote Continued) ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

shared legal and physical custody of Child to Mother and Grandparents, and therefore, any issue concerning custody is waived. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (citations omitted) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived."); *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

(iii) when one of the following conditions is met:

(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324.

The term *in loco parentis* literally means "in the place of a parent." *K.W.*, 157 A.3d at 504-505 (citation omitted). There are two components to *in loco parentis* standing: (1) "the assumption of parental status[;] and [(2)] "the discharge of parental duties." *Id.* at 505. Specifically, we note that "*in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of, the wishes of a parent." *E.W. v. T.S.*, 916 A.2d 1197, 1205 (Pa. 2007).

Mother argues that Grandparents' relationship with Child did not amount to *in loco parentis* standing. The crux of this contention is that, although Child resided with Grandparents since shortly after Child's birth, Mother had "expressed criticism that the Child was spending too much time with Intervenors," and thus, Mother had not consented to Grandparents

assuming the role of parent. Mother's Brief at 28. In support, Mother argues that the instant matter is indistinguishable from **D.G. v. D.B.**, 91 A.3d 706 (Pa. Super. 2014), in which this Court denied the grandmother *in loco parentis* standing. **Id.** at 712. In denying *in loco parentis* standing, this Court held:

> [The g]randmother has played a large role in [the child's] life, providing occasional shelter, meals, laundry, and transportation to and from medical appointments. As of the custody hearings, however, [the m]other and [the child] had not lived at [the g]randmother's residence for four years. Nothing in the record indicates that the parties ever intended for [the m]other and [the child] to reside permanently with [the g]randmother. In fact, [the m]other and [the child] stopped living with [the g]randmother in 2009 after [the g]randmother petitioned for welfare assistance for [the m]other in an attempt to get [the m]other and [the child] out on their own. [The g]randmother's effort to assist [the m]other and [the child] in leaving her home are strongly inconsistent with an assumption of full parental responsibility. . . . In summary, [the g]randmother's efforts on behalf of [the child] are substantial and commendable, but they are not consistent with an intent to assume all of the rights and responsibilities of parenthood.

**Id.** at 711.

The instant case is readily distinguishable, and Mother's claims are not persuasive. The record reveals that Grandparents were significantly more than glorified babysitters. Rather, Grandparents attended to Child's daily physical, emotional, and financial needs, and they assumed an enduring role that was more significant than a frequent caretaker. N.T., 1/3/17, at 42-43; N.T., 4/20/17, a 63-64. **Compare Argenio v. Fenton**, 703 A.2d 1042 (Pa Super. 2017) (where this Court denied *in loco parentis* status to a

grandparent who merely provided daily childcare). In the case at bar, although the parties gave conflicting versions of what role Grandparents played in Child's life, the trial court resolved questions of credibility in Grandparents' favor. N.T., 1/3/17, at 44. As the record supports the trial court's finding that Grandparents assumed the role of co-parent, Mother's claim fails.

Moreover, one of the primary considerations in determining *in loco parentis* status is the effect of the third-party relationship upon the child's best interest. As our Supreme Court explained,

> While it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objection.

*T.B. v. L.R.M.*, 786 A.2d 913, 917 (Pa. 2001).

Instantly, Grandparents have shared with Mother the parenting responsibility for the entirety of Child's life. Moreover, Mother and Grandparents testified that they shared parenting responsibilities. N.T., 4/20/17, at 63-66, 132-135, 145. Furthermore, as it relates to day-to-day child rearing, the certified record confirms that Grandparents fed, bathed, and entertained Child daily, attended parent-teacher conferences, and

transported Child to medical appointments and school. N.T., 4/20/17, at 135-37, 154. Grandparents also assisted Child financially, and they consistently have been a stabilizing force in the child's life and ensured her safety. *Id.*

Although Mother also asserts that Grandparents were precluded from assuming *in loco parentis* status because it was in contravention of her wishes, we likewise conclude that no relief is due. Stated plainly, Mother failed to oppose Grandparents' assumption of parental duties. Instead, she allowed Grandparents to share in the parental responsibilities. Mother not only declined to protest Grandparents' emergent role, she did not attempt to intercede in Grandparents' assumption of parental duties. Through her own inaction, Mother acquiesced to the development of the *in loco parentis* relationship between Grandparents and Child. As the certified record confirms that Grandparents shouldered at least a shared role of providing day-to-day care of Child with Mother's implicit approval, it belies the inference that Grandparents assumed parental status in defiance of Mother's wishes. *See M.J.S. v. B.B.*, 172 A.3d 651, 657 (Pa. Super. 2017) (stating that a parent, through inaction, may acquiesce to the development of an *in loco parentis* relationship). Here, by failing to act while Grandparents raised her daughter, Mother acted in a manner consistent with her consent to their *in loco parentis* status.

Accordingly, we discern no error of law or abuse of discretion in the trial court's January 4, 2017 order granting Grandparents standing *in loco parentis* pursuant to Section 5324(2). Therefore, we affirm the May 26, 2017 order that made final the January 4, 2017 order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/5/2018