J-S51028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.B. | : | |
| | : | |
| | : | No. 981 MDA 2020 |
| APPEAL OF: M.U. & B.U. | : | |

Appeal from the Order Entered June 24, 2020
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2013-03683

BEFORE:  MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED:  JANUARY 19, 2021**

M.U. and B.U. appeal from the order denying their petition to intervene and their petition for special relief in the custody matter involving their great-grandson, A.B. ("Child"). We vacate the order and remand.

Child was born in March 2012. M.U. and B.U. are Child's paternal great-grandparents ("Great-Grandparents"). When Child was approximately a year and a half old, in September 2013, the Cumberland County Court of Common Pleas entered a consent order awarding physical custody to B.B. ("Father"), with partial custody to A.L. ("Mother"). The court subsequently amended the order, in December 2013, also by consent of the parties, and detailed the terms of Mother's partial custody. Mother's custody was to take place at Great-Grandparents' residence until Mother could obtain adequate housing.

These orders remained the operative custody orders in this case until August 2019, when Mother filed a petition in York County for a protection from abuse ("PFA") order on behalf of Child and against Father. The York County court entered a final PFA order on August 29, 2019, which altered custody and gave Mother temporary primary physical custody of Child.

Approximately two and a half months later, on December 17, 2019, Great-Grandparents filed a petition to intervene in the Cumberland County custody action, seeking primary physical and legal custody of Child ("Petition to Intervene"). Great-Grandparents alleged that they "had and continue to have, a close relationship with the child, in fact having the child live with them on multiple occasions, including the majority of the past 5 years." Petition to Intervene, 12/17/19, at 1.

They further averred that even though Father (*i.e.*, their grandson) no longer exercises any custodial time with Child, Child "visits [Great-Grandparents] and stays overnight at their home on a regular basis," and "refers to [Great-Grandparents'] home as his home." *Id.* at 2. They also contended that Child "is fearful of going to Mother's home when he leaves [Great-Grandparents'] home," "desperately wants to return to [Great-Grandparents'] home," and Mother cannot provide adequate housing for Child and that Mother's current home is "without a furnace." *Id.* at 3-4. Great-Grandparents' overarching claim was that "Mother has proven unable to provide for [Child's] most basic needs, physically, emotionally and spiritually,

relying on [Great-Grandparents] to perform the essential parenting duties and responsibilities." *Id.* at 4.

Great-Grandparents thus maintained that they had standing to intervene under 23 Pa.C.S.A. § 5324(2) because they stood *in loco parentis* to Child. In the alternative, they claimed that they had standing under the grandparents and great-grandparents standing statute, 23 Pa.C.S.A. § 5325(2).

Approximately a month after they filed the Petition to Intervene, and before the court had ruled on the Petition, Great-Grandparents filed an emergency petition for special relief ("Emergency Petition") in the Cumberland County custody case. They alleged that "Mother's living situation had changed and the environment for [Child] has deteriorated significantly," and requested immediate physical custody of Child. Emergency Petition, 1/22/20, at 2. They asserted that their home was "intended to be the place of refuge for [Child], as it was and is the most stable, loving and nurturing environment available for [Child]." *Id.* at 3.

While both the Petition to Intervene and the Emergency Petition were still pending, in February 2020, Mother filed a petition in the instant case in Cumberland County to modify custody. Mother pointed out that she already had emergency physical custody of Child due to the York County PFA order. She also alleged that Father had not exercised any physical custody of Child since the entry of the PFA order in August 2019. Mother therefore sought sole legal and physical custody of Child.

Mother then responded to Great-Grandparents' Petition to Intervene and their Emergency Petition. Mother disputed Great-Grandparents' representations about their relationship with Child. Mother instead claimed:

[Child] has not lived with Great-Grandparents for the majority of the past five (5) years. Five years ago, [Child] lived at Great-Grandparents['] residence because [Child] was under the custody of [Father] and [Father] lived at the Great-Grandparents' residence. Three years ago, [Father] and [Child] moved out of the Great-Grandparents' residence and [Child] has not resided at the Great-Grandparents' residence since. Thus, Child lived at Great-Grandparents['] residence for two of the past five years. When [Father] moved out of Great-Grandparents' residence; [Father] ended [Child's] relationship with the Great-Grandparents. The relationship between [Child] and the Great-Grandparents remained nonexistent until [Mother] gained primary custody of [Child] last year and allowed the relationship to continue. However, that relationship has started to deteriorate and become nonexistent again because Mother has learned troubling facts about the Great-Grandparents' care of [Child], in particular, that the Great-Grandparents pay [Child] to sleep in the Great-Grandparents' bed instead of [Child's] own bed.

* * *

Child used to stay overnight at the Great-Grandparents['] house every other weekend. However, Child has stayed less at the Great-Grandparents' home since [Mother] learned that the Great-Grandparents were paying [Child] to sleep in their bed instead of [Child's] bed.

* * *

Mother admits that Great-Grandparents have purchased additional clothing for [Child] but denies any allegation that the Great-Grandparents buy clothing that is necessary for [Child]. Mother has been and is able to pay for all clothing and expenses needed for [Child] on her own.

* * *

Child refers to Mother's home as his home.

- 4 -

Mother's Response, 3/30/20, at 1-2.

Mother also contended that Great-Grandparents did not have standing under 23 Pa.C.S.A. § 5325(2) because they were seeking sole custody and Section 5325(2) at most confers standing to seek partial custody. *See id*. at 2. Further, and most significantly, Mother maintained that Great-Grandparents did not have standing under the 23 Pa.C.S.A. § 5324(2) because they did not plead sufficient facts to establish that they stood *in loco parentis* to Child. *Id.* at 3.

After the parties had each already submitted the above filings in the Cumberland County matter, Child's paternal grandmother sought a PFA order on Child's behalf in York County against Mother. The York County court ultimately granted the PFA order, on May 18, 2020, and granted temporary, primary, physical custody of Child to Great-Grandparents, with supervised visitation for Mother. *See A.J.B. v. A.L.*, 2019-FC-001529-12B (York Co. filed May 18, 2020). Mother appealed to this Court, and the appeal is presently pending. *See A.J.B. v. A.L.*, 904 MDA 2020.

Subsequently, on June 23, 2020, the Cumberland County court issued the order at issue in this appeal, denying Great-Grandparents' Petition to Intervene and Emergency Petition, without a hearing. Great-Grandparents filed a timely appeal; Great-Grandparents and the trial court complied with Pa.R.A.P. 1925.

Great-Grandparents raise the following issues:

1. Did the trial court abuse its discretion or commit[] an error of law in dismissing [Great-Grandparents'] Petition to Intervene due to a lack of standing?

2. Did the trial court abuse its discretion or commit an error of law by failing to consider the best interests of [Child] when dismissing [Great-Grandparents'] Petition to Intervene?

Great-Grandparents' Br. at 5.

We first confirm our jurisdiction, as the June 23, 2020 order is interlocutory. An appeal lies only from a final order, unless an exception to this general rule applies. ***K.W. v. S.L.***, 157 A.3d 498, 502 (Pa.Super. 2017). One such exception is the collateral order rule, which is found in Pennsylvania Rule of Appellate Procedure 313. Rule 313 allows an immediate appeal from an interlocutory order if the order is a collateral order. A collateral order "is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). An order denying intervention in a custody matter constitutes a collateral order. ***K.C. v. L.A***., 128 A.3d 774, 781 (Pa. 2015). The instant appeal is therefore properly before us.

Turning to the merits of the appeal, both of Great-Grandparents' issues concern the contention that the trial court erred by failing to consider them to be *in loco parentis*. Therefore, we will address them together. A person who stands *in loco parentis* of a child has standing to seek any form of physical custody or legal custody of the child. ***See*** 23 Pa.C.S.A. § 5324(2). The doctrine

of *in loco parentis* has two components: "(1) the assumption of parental status, and (2) the discharge of parental duties." ***M.J.S. v. B.B.***, 172 A.3d 651, 656-657 (Pa.Super. 2017) (citation and internal quotation marks omitted) (concluding that grandmother stood *in loco parentis* to grandchild when she lived with grandchild and mother as a family unit for five years, shared daily parental responsibilities, assisted the child financially, and had been "a stabilizing force in the child's life and ensured his safety").

In custody cases, we defer to the trial court's credibility and weight determinations and we accept its findings of fact if they have support in the record. ***See C.A.J. v. D.S.M.***, 136 A.3d 504, 506 (Pa.Super. 2016). However, we do not defer to factual deductions and inferences it makes from its factual findings. ***See id.*** We may reject its legal conclusions only if they involve an error of law or are unreasonable in light of its factual findings. ***See id.***

Great-Grandparents argue that their allegations were sufficient to establish that they stand *in loco parentis* to Child. They argue that Child has resided with them for the majority of his life, often in the absence of either parent, and that they developed their relationship with Child with the acquiescence of both parents. Great-Grandparents disagree with the trial court's characterization of their substantial contributions to Child's life as merely "child care" and "grooming." They also argue that the trial court failed to consider the best interests of Child, especially in light of the recent PFA order against Mother, when concluding that Great-Grandparents did not have standing to intercede in the instant custody matter. At the very least,

according to Great-Grandparents, the trial court should have conducted a hearing regarding their potential status as interveners.

Conversely, Mother maintains that the trial court correctly determined that the allegations within Great-Grandparents' Petition to Intervene were insufficient as a matter of law for them to be found to be *in loco parentis* to Child. Mother emphasizes that because the trial court denied Great-Grandparents' Petition to Intervene without holding a hearing, this Court must narrow its review of the trial court's decision to only the facts the parties alleged in their filings. On that basis, Mother argues that the trial court properly determined that Great-Grandparents did not meet the *in loco parentis* standard because they never asserted that they intended to assume the status of Child's parents, but rather were merely performing care-taking functions while parents were otherwise busy. Mother also asserts that Great-Grandparents only claimed to have spent time with Child, but did not assert that they "had any psychological bonds" with Child or that they had provided Child with "care, nurture and affection." Mother's Br. at 9.

To this end, Mother likens this case to ***D.G. v D.B.***, 91 A.3d 706 (Pa.Super. 2014), and ***Argenio v. Fenton***, 703 A.2d 1042 (Pa.Super. 1997). In ***D.G.***, this Court reversed the trial court's order finding that a grandmother stood *in loco parentis* to the child at issue. There, although the grandmother had lived with the child and the child's mother on two separate occasions, the grandmother had sought welfare assistance so that mother and child could move out. ***D.G.***, 91 A.3d at 710. Our court concluded that although the

grandmother in **D.G.** had commendably provided child with occasional shelter, meals, laundry and transportation, these efforts were not consistent with an intent to assume all parental responsibilities and therefore the trial court had erred by finding that the grandmother stood *in loco parentis* to the child. **Id.** at 711-712.

In **Argenio**, this Court concluded that the grandmother at issue did not stand *in loco parentis* with her granddaughter. She lived with the child and her mother for the first year of child's life, but thereafter, the child lived with the mother, although the grandmother provided some care. 703 A.2d at 1043. Our Court held although the grandmother acted as a frequent caretaker for the child, she did not act as a person intending to informally adopt the child or take on the duties and obligations of parenthood. **Id.** at 1044.

As Mother notes, the procedural posture of this case is such that the trial court concluded that Great-Grandparents did not stand *in loco parentis* to Child based solely on Great-Grandparents' petition and Mother's response. It did not hold a hearing or make findings of fact. It instead declined to hold a hearing and denied the petition because, in the trial court's view, the allegations in Great-Grandparents' petition were insufficient to find them *in loco parentis* to Child. We disagree.

In their petition, Great-Grandparents stated that they "had and continue to have, a close relationship with the child, in fact having the child live with them on multiple occasions, including the majority of the past 5 years." Petition to Intervene at 1. They further averred that "Mother has proven

unable to provide for [Child's] most basic needs, physically, emotionally and spiritually, relying on [Great-Grandparents] to perform the essential parenting duties and responsibilities." *Id.* at 4. Assuming, *arguendo*, that these allegations are true, Great-Grandparents' *in loco parentis* claim has merit. **See Argenio**, 703 A.2d at 1043. Accordingly, we hold that the trial court erred by denying the Petition to Intervene without holding a hearing.

Indeed, Mother's argument on appeal highlights the need for a hearing as she disputes Great-Grandparents' characterization of the facts. Contrary to Great-Grandparents, she asserts that Child only lived with Great-Grandparents for a limited time and that the relationship between Child and Great-Grandparents has been deteriorating. This factual dispute is the very reason a hearing is necessary – to provide the parties with an opportunity to prove their contentions and to enable the court to make credibility determinations. As this Court has emphasized, issues of standing, especially regarding a potential *in loco parentis* determination, are highly fact-specific. **See C.G. v. J.H.**, 172 A.3d 43, 54-55 (Pa.Super. 2017). The instant case is no exception and we conclude that a hearing is necessary to provide the fact-finder with an opportunity to consider the evolving factual allegations at issue in this case. Accordingly, we vacate the trial court's order denying Great-Grandparents' Petition to Intervene and remand for proceedings consistent with this memorandum.

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/19/2021