J-A29003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JEREMY SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TINA GLAAB | : | |
| | : | |
| | : | No. 984 WDA 2024 |
| APPEAL OF: MELINDA LOCKARD AND | : | |
| ARTHUR LOCKARD | : | |

Appeal from the Order Entered July 23, 2024
In the Court of Common Pleas of Armstrong County Civil Division at
No(s):  2011-0515-CIVIL

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:              **FILED: JANUARY 13, 2025**

Appellants, Melinda Lockard ("Grandmother") and Arthur Lockard ("Grandfather") (collectively, "Paternal Grandparents"),[1] appeal from the order denying their petition to intervene in the custody action between Jeremy Smith ("Father") and Tina Glaab ("Mother") (collectively, "Parents").  We affirm.

Parents are the biological parents of K.S. ("the Child"), age 13.  Parents lived with Paternal Grandparents when the Child was born (February 2011).  On March 28, 2011, when the Child was approximately two months old, Father

---

[1] As the trial court pointed out, "Grandfather is actually Paternal Step-Grandfather."  Trial Court Opinion, 7/23/24, at 1, n.1.  Grandfather, however, "did not testify or sign the Verification for the [p]etition to [i]ntervene" and, as such, Grandmother's involvement in the Child's life was the focus of the May 16, 2024 hearing, as well as the trial court's subsequent analysis.  ***Id.*** at 2.

filed a complaint for custody. On May 6, 2011, "a consented-to order [was entered,] granting [Parents] shared legal custody, Father primary [physical] custody, and Mother partial [physical] custody." Trial Court Opinion, 7/23/24, at 1-2. Despite the aforementioned consent order, Parents reconciled and resumed living together at Paternal Grandparents' residence for approximately 18 months. At this time, Grandmother took care of the Child "during the day when [Parents] worked." N.T. Hearing, 5/26/24, at 10. Thereafter, Parents and the Child moved out of Paternal Grandparents' residence and resided together as a family. Grandmother continued to "watch [the Child at Paternal Grandparents' residence] while [Parents] were at work during the week" but Parents "had [the Child] on weekends." Trial Court Opinion, 7/23/24, at 4.

When the Child was three years old, Parents separated. Pursuant to the May 2011 consent order, Father had primary physical custody of the Child.

> The general custody arrangement, with some variation, was that [Parents alternated weekend custody of the Child]. Both parents worked during weekdays. Father would not get home from work until 1:00 or 2:00 a.m., so Father agreed to [] Grandmother's suggestion that he leave [the Child] with her so as not to disrupt [the Child's] sleep. On Sunday evenings, whichever parent had custody that weekend would return [the Child] to Paternal Grandparents. However, sometimes Mother had custody during the weekdays[] and would drop [the Child] off at Paternal Grandparents' residence when she went to work. When [the Child] started kindergarten, the school bus picked him up at Paternal Grandparents' residence. [From the time the Child started kindergarten until he entered fifth grade, he] lived with Mother every other week. Father would have custody during Mother's non-custody week [and the Child stayed] with Paternal Grandparents' during Fathers' week.

*Id.* at 4-5.

When the Child entered fifth grade in 2021, the custody arrangement shifted due to the Child's autism diagnosis. In particular, the "arrangement went from a week on/week off schedule to [the Child] spending every weekday, generally year-round, with Paternal Grandparents, with [Parents] alternating weekends." *Id*. at 5. The Child, however, still spent time with Parents. In particular, if Mother "[were] off work during the weekdays, [the Child] would spend time with her." *Id*. In addition, in the summertime, the Child would sleep at Father's residence "as much as [possible]." N.T. Hearing, 5/16/24, at 49. The aforementioned arrangement continued until March 21, 2024, when Paternal Grandparents filed the instant petition to intervene, seeking to obtain custody of the Child. After receiving the petition, Father did not return the Child to Paternal Grandparents' residence and, as such, the Child has since resided primarily with Father. On May 15, 2024, the trial court convened a hearing on Paternal Grandparents' petition during which Grandmother, Father, and Mother testified. On July 23, 2024, the trial court entered an order denying Paternal Grandparents' petition. This timely appeal followed.

Paternal Grandparents raise the following issue for our consideration.

[Whether the trial court erred in determining that Paternal Grandparents lacked standing under 23 Pa.C.S.A. §§ 5324(2) and (3) in dismissing their petition to intervene in the underlying child custody matter?]

*See generally* Parental Grandparents' Brief at 4-5.

On appeal, Parental Grandparents' challenge the trial court's determination that they lacked standing to intervene in the underlying custody matter between Parents. Initially, Parental Grandparents argue that the trial court erred in holding that they did not stand *in loco parentis* to the Child under 23 Pa.C.S.A. § 5324(2). In the alternative, Parental Grandparents claim that the trial court erred in concluding that they did not establish standing under 23 Pa.C.S.A. § 5324(3). We will address each of Parental Grandparents' claims in turn.

We are guided by the following principles when reviewing a case under the Child Custody Act:[2]

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.L. v. M.P.*, 255 A.3d 514, 520 (Pa. Super. 2021) (formatting altered and citation omitted).

---

[2] 23 Pa.C.S.A. §§ 5321-5340.

Standing "is a threshold issue that must be resolved before proceeding to the merits of the underlying custody action." **C.G. v. J.H.**, 193 A.3d 891, 898 (Pa. 2018). Issues of standing involve questions of law and, as such, "our standard of review is *de novo* and our scope of review is plenary." **K.W. v. S.L.**, 157 A.3d 498, 504 (Pa. Super. 2017) (citation omitted omitted). In general, the "Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents. The Act[, however,] provides several exceptions to this rule, which apply primarily to grandparents and great-grandparents." **Id.** (citation omitted). Indeed, Section 5324 of the Child Custody Act provides, in relevant part, as follows:

> The following individuals may file an action under this chapter for any form of physical custody or legal custody:
>
> (2) A person who stands *in loco parentis* to the child.
>
> (3) A grandparent of the child who is not *in loco parentis* to the child:
>
>> (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
>>
>> (ii) who assumes or is willing to assume responsibility for the child; and
>>
>> (iii) when one of the following conditions is met:
>>
>>> (A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);
>>>
>>> (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

> (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. § 5324(2)-(3).

We first address Parental Grandparents' contention that they stand *in loco parentis* to the Child. In support of this claim, Parental Grandparents aver that they satisfied "the Child's daily physical, emotional and financial needs for most, if not all, of the Child's life." Parental Grandparents' Brief at 21. In addition, Parental Grandparents contend that they assumed *in loco parentis* status with Parents' consent. *Id.* at 25-28.

This Court previously explained:

> "The term *in loco parentis* literally means 'in the place of a parent.'" A person stands *in loco parentis* with respect to a child when he or she "assum[es] the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties." [Importantly,] "*in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of[,] the wishes of a parent."

*K.W.*, 157 A.3d at 504–505 (internal citations omitted).

In this instance, the trial court held that Parental Grandparents did not stand *in loco parentis* to the Child. In so doing, the trial court found that, while Paternal Grandparents "assumed some parental obligations and discharged [some] parental duties," they "did so only as volunteers during

weekdays to accommodate [P]arents' work schedules and maintain some consistency with [the Child's] school schedule." Trial Court Opinion, 7/23/24, at 8. The Parents still "fulfilled their parental obligations and duties toward [the Child] on weekends and oftentimes during weekdays" and did not, in any way, "relinquish their parental obligations." *Id*. Simply put, the trial court determined that Paternal Grandparents "have not and are not acting in *lieu* of [Parents]." *Id.* (emphasis added). Instead, they "simply did what most grandparents or a regular babysitter would do – watch [the Child] while [Parents] are at work." *Id*. It is apparent, therefore, that the trial court considered Paternal Grandparent's actions to be consistent with helping Parents through a period of need, which this Court has held does not establish *in loco parentis* status. *See D.G. v. D.B.*, 91 A.3d 706, 711 (Pa. Super. 2014) (holding that, while grandmother's "efforts on behalf of [the child were] substantial and commendable," they were "not consistent with an intent to assume all of the rights and responsibilities of parenthood" and, as such, the trial court erred in finding that the grandmother stood *in loco parentis* to the child); *see also Argenio v. Fenton*, 703 A.2d 1042, 1045 (Pa. Super. 1997) (accord). Because our case law and review of the record supports the trial court's finding, we conclude that the trial court did not abuse its discretion in holding that Parental Grandparents did not stand *in loco parentis* to the Child.

We now turn to Parental Grandparents claim that the trial court erred in holding that they did not meet the requirements of Section 5324(3). Importantly, it was undisputed that the Child's relationship with Parental

Grandparents began with Parents' consent and that Parental Grandparents are willing to assume responsibility for the Child. *See* 23 Pa.C.S.A. § 5324(3)(i) and (ii).[3]  The only issue, therefore, is whether the Child resided with Parental Grandparents for "at least 12 consecutive months . . . excluding brief temporary absences."  23 Pa.C.S.A. § 5324(3)(iii)(C).

In this instance, the trial court recognized that "Paternal Grandmother testified that Paternal Grandparents have been figures in [the Child's] life for a 12-month period, with the exception of a week here and there."  Trial Court Opinion, 7/23/24, at 9.  The trial court, however, also noted that "Father testified that during summers since [the Child] was in fifth grade, [the Child] stayed about half the time at his house.  During the other half, [the Child] would either be with Mother or Paternal Grandmother." *Id.*  Because the court concluded that the periods in which the Child stayed at Father's house were "more than 'brief temporary absences,'" it determined that the Child did not reside with Parental Grandparents for 12 consecutive months and, as such, Parental Grandparents failed "to meet the third prong of the statute." *Id.*  Again, our review of the certified record confirms the trial court's findings.  To the extent that Grandmother and Father presented conflicting testimony regarding the periods in which the Child was absent from Paternal Grandparents' home, it is apparent that the trial court made a credibility

---

[3] Moreover, Paternal Grandparents do not assert that the Child was deemed a dependent juvenile under  42 Pa.C.S. Ch. 63, or that the Child was substantially at risk due to parental abuse, neglect, or alcohol abuse or incapacity. *See* 23 Pa.C.S.A. § 5324(3)(iii)(A) and (B).

determination and decided to credit Father's testimony, as opposed to that of Grandmother's, which was within its province as fact-finder to do. We will not disturb the trial court's credibility determinations on appeal. ***See Johnson v. Lewis***, 870 A.2d 368, 372 (Pa. Super. 2005) ("The fact-finder is free to believe all, part, or none of the evidence, and this Court will not disturb the trial court's credibility determinations."). Accordingly, we conclude that the trial court did not abuse its discretion in concluding that Parental Grandparents did not meet the requirements of Section 5324(3) and, thus, lacked standing to intervene in the underlying custody action.

Based upon all of the foregoing, we affirm the trial court's order denying Paternal Grandparents' petition to intervene for lack of standing.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/13/2025