672 A.2d 835

Ronald B. CAMPBELL and Anna Mae Campbell

v.

Sherry Daniel CAMPBELL, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 25, 1995.

Filed March 11, 1996.

Edward L. Crow, York, for appellant.

Susan A. Docktor, York, for appellee.

Before CAVANAUGH, KELLY and HESTER, JJ.

HESTER, Judge:

Sherry Campbell, the natural mother of Michael and Nicole Campbell, appeals from the January 23, 1995 order of the York County Court of Common Pleas which transferred primary physical custody of her children to the paternal grand-

parents, Ronald and Anna Mae Campbell, appellees herein. We affirm.

Appellant ("Mother") is divorced from appellees' ("Grandparents") son ("Father"). Two children were born of the marriage: Michael, born July 30, 1985, and Nicole, born July 3, 1987. Father, an alcoholic who subsists on social security disability income, is not involved with the children and sees them sporadically only under the supervision of Grandparents and only when he is sober. Notes of Testimony ("N.T."), 1/6/95, at 40–41. Father is not involved in this appeal.

Mother and Father moved frequently after Michael's birth in 1985. Mother, Father, and Michael lived with Grandparents outside of Johnstown, Pennsylvania, from November, 1985, until April, 1986, when they moved to York, Pennsylvania. *Id.* at 15. The parents moved again in the fall of 1986, stopping in North Carolina en route to Florida. The parents called Grandparents from North Carolina and asked them to come and get Michael, which they did. *Id.* at 17. Michael lived with Grandparents until sometime in the winter of 1987. *Id.* Nicole was born in July of that year, and the children often were left with Grandparents for weeks or months at a time. *Id.* at 16.

When the parents separated and divorced, Mother and the children lived with Grandparents in early 1990. In the fall, Mother enrolled Michael in kindergarten, left him in Grandparents' care, and took Nicole to York, Pennsylvania. Some weeks later she returned, took Michael out of school, and went back to York. *Id.* at 18. In December, 1990, Mother called Grandparents and asked them to come to York and get the children. *Id.* at 19. Mother then granted Grandparents temporary legal and physical custody in February, 1991, and the children resided with Grandparents until August, 1991, when Mother took the children away again. *Id.* at 20. Grandparents unsuccessfully tried to locate the children throughout the next twelve months. *Id.* at 22.

Upon locating Mother, Grandparents filed a petition for visitation or partial custody in August, 1992, and a dependency

action in October, 1993, based upon the deplorable care Mother was providing the children. The children were dirty, smelled of urine, had feces on their clothing, and at times lacked proper clothing, including underwear. On March 23, 1994, pursuant to a negotiated agreement between Mother and Grandparents, the common pleas court ordered that Grandparents and Mother share legal custody. Mother was awarded primary physical custody [1] and Grandparents were given partial physical custody every third weekend, one-half of the summer vacation, and various other school vacations. The court also ordered Mother, *inter alia,* to cooperate with York County Children and Youth Services and to obtain counseling for the children. Mother never appealed this custody order.

As a result of information gained through the exercise of their partial custody rights and due to Mother's non-compliance with the March 23, 1994 order, Grandparents eventually sought primary physical custody of the children. Hearings were held on January 6 and 13, 1995. Grandparents testified and presented the testimony of various witnesses, including Mother's friends and neighbors, and the expert testimony of a licensed psychologist who evaluated the parties and the children. Mother presented only her testimony. The court interviewed the children in chambers.

On January 23, 1995, the common pleas court awarded primary physical custody to Grandparents and partial physical custody to Mother. This appeal followed. Mother does not question the findings of fact and conclusions of the trial court; rather, she asserts that Grandparents lacked standing to maintain this action. We reject Mother's claim.

Mother has confused principles of standing with the proper standard to be applied in deciding a custody dispute between parents and third parties. *See Walkenstein v. Walkenstein,* 443 Pa.Super. 683, 663 A.2d 178 (1995) (natural mother confused burden of proof as to custody with principles of standing as they relate to a third party's ability to pursue custody action against a natural parent). In making her claim that

---

1. The common pleas court termed this "majority" physical custody.

Grandparents lacked standing to seek primary physical custody of Michael and Nicole, Mother argues that "the trial court failed to make a finding that the mother's prima facie right to custody was overcome." [2]

Mother's argument in this regard is referring to a natural parent's prima facie right to custody, a standard articulated in *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980), and based upon the rule discussed in *In re Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977), which pertains to custody disputes between parents and third parties. However, our Supreme Court departed from this *per se* presumption in favor of natural parents in *Rowles v. Rowles*, 542 Pa. 443, 668 A.2d 126 (1995), and held that parenthood is to be weighed as a strong factor for consideration by the court. The *Rowles* Court stated, "Thus, there is no single overriding factor; rather, courts should consider every fact relevant to the physical, emotional, intellectual, moral, and spiritual well-being of a child. Parenthood, *though not paramount*, will always be a factor of significant weight." *Id.*, 542 Pa. at 448, 668 A.2d at 128 (emphasis added).

This process of weighing and comparing the relevant factors of the competing custodial environments is not the issue raised by Mother, however. While she has utilized case law pertaining to the standard to be applied by the courts in deciding custody disputes between natural parents and third parties, the issue she raises is that Grandparents *lacked standing* to pursue this matter.

The question of standing is rooted in the notion that for a party to maintain a challenge to an official order or action, he must be aggrieved in that his rights have been invaded or infringed. The law of standing provides that one cannot evoke the jurisdiction of the court to enforce private rights or to maintain a civil action for the enforcement of such rights, unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a

2. We are unable to cite to pages of appellant's brief as she has failed to number it.

legal right, title or interest in the subject matter or controversy.

*Kellogg v. Kellogg,* 435 Pa.Super. 581, 584, 646 A.2d 1246, 1248 (1994), quoting *Jackson v. Garland,* 424 Pa.Super. 378, 383, 622 A.2d 969, 971 (1993). We noted in *Kellogg* that traditional principles of standing are modified in child custody cases in that the relevant analysis considers the relationship of the parties asserting standing.

Clearly, there is no issue of standing in this case. Grandparents were granted joint legal custody of these children with Mother's agreement in March, 1994. Mother never appealed that order of custody. Having joint legal custody of the children and partial physical custody, Grandparents clearly had standing to seek primary physical custody. *See Tracey L. v. Mattye F.,* 446 Pa.Super. 281, ——, 666 A.2d 734, 735 (1995) (third party, who not only acted in loco parentis but previously was awarded custody, clearly had standing to challenge custody order); *Walkenstein v. Walkenstein, supra* (Grandmother established her standing since she was granted custody of child by court order, and order never was appealed).

Mother's related argument in this appeal is that since Grandparents lacked standing to pursue primary physical custody, the only valid basis for the trial court's order was a finding of dependency, and the court erred, if its order is interpreted as a finding of dependency, in failing to establish a service plan. We need not address this issue as we have determined that Grandparents did indeed have standing to seek physical custody. Thus, any argument based on dependency is irrelevant.

Order affirmed.

CAVANAUGH, J., concurs in the result.