DECISION
The defendant in this matter has moved, pursuant to Super.Ct.R.Crim.Proc. 9.1, to dismiss the charge against him which accuses him of leaving the scene of an accident death resulting.
The pertinent facts of the events in question are largely uncontested, and are as follows. Sean Commins spent the evening of May 14, 2000 with his friend, a college student, Jennifer Holdridge.
Sean picked up Jennifer at her Warwick home around 6 p.m. driving his mother's white 1992 Honda.
The two friends went to play pool at the Re-Bar in Warwick and then traveled to The Cactus Grill in Providence. Finding the latter establishment closed, they returned to Warwick and had a cocktail at Chelo's. Around 10 p.m. they went to eat at Taco Bell on Route 2 in Warwick and after leaving, drove north on Route 2 and then east onto Main Avenue. As they approached the area of Main Avenue which adjoins an airport runway, Jennifer leaned forward to change the radio station. As she did so the defendant heard a "loud bang" and the right hand side of the windshield shattered, showering Jennifer with fragments. The defendant indicated that he "slammed on the brakes", activated his hazard lights and got out of the car. Jennifer states that he ran behind the car for a short time then returned and said, "I don't know what I hit." They talked "a little bit" about construction in the area and about the glass on Jennifer. The defendant then drove Jennifer to her home and dropped her off inquiring if she was all right. She then removed her clothing in the garage and went inside the house. She told her mother, Debra Holdridge, what had happened and that she thought it was construction related. Mother and daughter retired around 10:45 p.m. The next morning Mrs. Holdridge learned of a hit and run accident on the television news. She informed her daughter who called the defendant and the three of them went to the police station.
The previous evening, at around 10:15 p.m., Tira and Jeffrey Gelinas were driving home along the same route as Jennifer and Sean. From their car they observed a bike in the road and a person lying in the grass next to it. When they were unable to arouse any response, they called 911.
The victim was located on a grassy portion of the shoulder of the south side of the roadway.
There is no breakdown lane at this point but there is a curbing, a sidewalk, and a grassy area of several feet to chainlink fence enclosing airport property. The victim had been clad in a navy blue hooded sweatshirt with the hood up, blue jeans and black boots. His ten-speed bicycle was located several feet away with a bent frame and heavily damaged rear wheel. Most of the bicycle was lying on the sidewalk with approximately one-half of the rear wheel jutting out into the first lane of travel. In the roadway an officer observed pieces of plastic lenses which he felt were newly deposited on the highway by the suspect vehicle. There was damage on defendant's vehicle consistent with the manner in which the police theorize the accident occurred.
The police did confirm that the runway lights and approach lights were operating on the night in question and did provide illumination. Additional illumination would have been provided by defendant's hazard lights.
The police also state that no construction was taking place in the area and no obstructions existed to impede travel or one's view.
The defense urges this Court to dismiss the charge because no evidence exists to furnish probable cause to believe that Mr. Commins "knowingly" left the scene. He cites in support State v. Baker, 672 A.2d 835 (R.I. 1993) and State v. Wall, 482 P.2d 41 (Kansas, 1971 — the defendant cites 42 P.2d; the correct cite is 482). In Baker, the defendant and the victim had been attendees at a rowdy bachelor party. Prior to the accident, seven to ten men were beating the defendant through the open window of his truck in which he sat seat-belted. When the defendant tried to roll up the window it was shattered by a fist. When the melee ceased the defendant's face looked like "a pound of hamburger . . . . his eyes were little beads, he could hardly see and there was blood all over the place and little square crystals of glass in his face. . . .the defendant's eyes were swollen, his nose was broken, blood was running from his ears, and his mouth looked like someone had hit him with a baseball bat." In this condition he drove from the parking lot where the attack occurred but subsequently returned and struck and dragged the victim beneath the truck. The defendant had no awareness of the accident because of the violent beating and the Supreme Court determined that the trial court should have entered a judgment of acquittal on the charge.
In Hall, the defendant was rendered unconscious by the collision. He remembered that he had been driving home after dropping off a babysitter and his next recollection was awakening in a field by the side of the road. In the early morning hours, after the nighttime accident, he walked half a mile to a house whose occupant described the defendant as "bewildered" and as someone who "could not comprehend." A physician testified that the type of head injury defendant suffered could cause loss of consciousness. Thus, there was insufficient evidence to support a conclusion that the defendant had knowingly left the scene of an accident.
Unlike the defendants in the aforementioned cases, Mr. Commins was alert and oriented and knew that some sort of collision had occurred. Therefore, Baker and Wall are inapplicable.
The defense argues that because of the distance the victim and his bicycle were thrown from the scene it is reasonable to conclude that construction equipment or debris caused the accident, which is what Sean and Jennifer concluded. Yet, the police say that the area was free of such items.
Subsequent motorists were able to see the victim and the bicycle yet the defendant saw nothing. (The Court is aware that defendant argues, on this point, that headlights would illuminate the area).
The Court has also considered the case of State v. Minkel, 230 N.W.2d 233
(S.D. 1975); recognizing that our Supreme Court has stated it "was not quite willing to go that far." At the Minkel trial the only evidence to prove a hit and run offense was that the investigating officer would have testified that the defendant, while driving his motor vehicle, struck a man on a bicycle causing him to crash to the ground resulting in his injury and death. Minkel contended that his conviction was invalid because the state failed to prove his knowledge of the accident. The defendant had contended that he was unaware of the accident until he returned home and noticed that his right front mirror was bent; whereupon he called the police. In the instant case, the defendant encountered a very dramatic situation. A loud bang was reported with the simultaneous shattering of glass upon the passenger.
There is no evidence of construction equipment or debris being present. The impacting force would obviously have to be as high as the windshield and of such force to shatter it. The Minkel court stated that "proof of an accident which is so serious that it results in death may, in itself, be sufficient for an inference of knowledge, absent a showing of extraordinary circumstances." The Court noted that it would be "difficult to imagine any accident [emphasis supplied] involving contact between an automobile and a bicycle in which a reasonable driver would not know that the collision occurred. Moreover, when that collision is serious enough to cause death, the inference that the driver knew of it becomes even stronger."
In the instant case, there is no evidence of callousness. However, there is abundant evidence of a crash so forceful that it killed a human being and propelled him and his bicycle a significant distance. If one thought this was caused by a piece of equipment or debris, why would one not call the police immediately in order to protect other citizens from a similar encounter? It certainly is not for the defendant to answer this question. The Court recognizes that he has absolutely no burden of doing so and that there is no suggestion that he acted with malice. However, the Court at this juncture, is not resolving the issue of guilt or innocence. It is merely determining whether or not the charge can be sustained pursuant to the broad rule it is bound to apply. Applying that rule, the Court is compelled to conclude that the allegation of "knowledge," although tenuous in significant respect, and perhaps unable to survive a motion for judgment of acquittal, can survive a dismissal motion under the rule the Court is bound to apply. Therefore, the defendant's motion to dismiss must be denied.