**Gibson v. Mann**

C.P. of Carbon County, no. 04-1854.

*Cynthia A. Dyrda-Hatton,* for plaintiff.
*Massie C. Gibson III,* pro se.
*Barry C. Shabbick,* for additional defendant.

NANOVIC, *P.J.,* April 22, 2005—

## FACTUAL AND PROCEDURAL BACKGROUND

The subject of these custody proceedings, Amanda Gibson, is 12 years old. Amanda is the daughter of Lori Gibson, plaintiff (Mother), and Massie C. Gibson III, defendant (Father). She has one sister, Brianne Mann, age 16, and one brother, Jayson Gibson, age 11.

Amanda's parents separated on May 28, 1997, and have lived separate and apart since that time. For more than four years, Amanda's father has not been active in her life. Although named as a defendant and appearing at the initial conciliation conference, Amanda's father did not participate further in these proceedings.

As of March 2000, Amanda's mother was unemployed and homeless, and had no place to go with her three children. Desperate to find a home for her children, she contacted her father, with whom she had a strained relationship, and asked for his help. Gerald Mann, the Mother's father, and his wife, Penelope Mann, the Mother's stepmother, agreed to permit the children to live with them on a temporary basis.

In accordance with this agreement, the children were brought to the Manns' home in early March 2000. The original arrangement was for the Manns to care for the children during the week and for the Mother to have

the children on weekends. The Mother provided a handwritten note to the Manns granting them temporary custody of the children and authorizing them to enroll the children in the Palmerton Area School District. The Mother was not to live in the Manns' home and did not do so.

The foregoing arrangement continued for approximately three weeks. On the third weekend, the Mother was late to pick up her children. By the time the Mother arrived, the Manns had already left their home with the children to attend a baseball game in which the Manns' son was playing and had left a note to the Mother asking her to contact them when she wanted to see her children. For almost four months, Mother made no contact.

Instead, in April 2000, the Mother moved to Texas without telling the Manns that she was leaving or where she could be located. Not until July 2000, during the course of support proceedings, did the Manns learn that the Mother was residing in Texas. On August 23, 2000, the Manns filed a custody action in Carbon County docketed to no. 00-1608. In or about August 2000, the Manns also learned for the first time that Amanda was likely sexually abused by the Mother's older brother in February or March 2000, while living temporarily in the home of the Mother's sister, Hanelora Mann.

A custody order granting primary custody of Amanda and Brianne to Gerald Mann and providing for custody/ visitation with the Mother at such times as agreed upon between the parties was entered on October 16, 2000; however, with the exception of Amanda, by this date the other children were placed by the Manns with other fam-

ily members.[1] For the next four years, the Manns took care of Amanda.

On June 28, 2004, three days after her father died, the Mother filed a custody complaint seeking primary custody of Amanda. Prior to that date, in August 2001, the Mother had briefly returned from Texas (for three days) and asked to have Amanda returned; this request was denied. Mother later moved back to Pennsylvania from Texas on May 12, 2002. On May 20, 2002, after the Mother and the Manns were unable to agree on a custody schedule, the Mother filed a contempt proceeding against the Manns claiming the Manns were in violation of the October 16, 2000 custody order; this request was also denied. Since October 5, 2004, pursuant to an interim order, the Mother has been provided partial physical custody of Amanda during the day on alternating weekends and every Wednesday.

At the present time, Mother appears to have turned her life around. While previously the Mother maintained a nomadic existence without any stable housing, and had insufficient income to care for herself or her children, today the Mother rents an apartment from her mother where she has resided for three years. Since returning from Texas she has full-time employment, and lives with, and supports, her daughter, Brianne, and her son, Jayson.

---

1. The record is silent as to whether the custody complaint docketed to no. 00-1608 was ever properly served on the Mother and she denies being aware of the custody proceedings until after an order was entered. It is also unclear from this record as to why primary custody was awarded to Gerald Mann only and not to both Gerald and Penelope Mann, the plaintiffs in the custody complaint.

There is no evidence that the Mother is currently an unfit parent.

The Mother originally named her father's estate as the defendant in these custody proceedings. Subsequently, Father was named as the defendant. Following a custody conference before the custody hearing officer, Penelope Mann (Grandmother) was included as an additional defendant in the proceedings. Initially, Mother challenges the standing of Grandmother to participate as a party.[2]

## DISCUSSION

In Pennsylvania there are three distinct categories of parties involved in child custody disputes: those between parents, those between a parent and the state, and those between parents and a third party. *Ellerbe v. Hooks,* 490 Pa. 363, 366, 416 A.2d 512, 513 (1980). For these purposes, a third party is any person who is not a natural or biological parent. *McDonel v. Sohn,* 762 A.2d 1101, 1105 (Pa. Super. 2000), *appeal denied,* 566 Pa. 656, 782 A.2d

---

2. Had service of the Manns' custody action filed in 2000 been properly perfected, there would be no issue of standing in this case. See *Campbell v. Campbell,* 448 Pa. Super. 640, 672 A.2d 835 (1996) (order awarding joint legal custody and partial physical custody to the paternal grandparents creates standing in the grandparents to seek primary physical custody).

In order to avoid a delay in hearing the merits of the Mother's custody complaint, a hearing on the Mother's challenge to Grandmother's standing was held concurrently with the hearing on the merits. This is consistent with the goal that custody actions be resolved as quickly as possible. See Pa.R.C.P. 1915.5(a); *Kellogg v. Kellogg,* 435 Pa. Super. 581, 589, 646 A.2d 1246, 1250 (1994).

547 (2001). As between the Mother and Grandmother, it is the third category with which we are concerned.

This classification is significant, bearing as it does on questions both of standing—whether the third party has an interest which the law recognizes as deserving of protection and therefore justiciable—and of the nature of the burden of proof faced by the third party. As to standing, absent a statute conferring automatic standing (*e.g.,* chapter 53 of the Domestic Relations Code, 23 Pa.C.S. §5311 et seq. (permitting grandparents and great-grandparents to seek visitation or custody of their grandchildren or great-grandchildren)),[3] in the context of dependency proceedings, or where a third party has acted in loco parentis, third parties in a custody proceeding are generally without standing. This result is justified on two bases: "not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning." *J.A.L. v. E.P.H.,* 453 Pa. Super. 78, 86, 682 A.2d 1314, 1319 (1996); see also, *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed. 2d 49 (2000) (plurality).[4]

---

3. In *Hill v. Divecchio,* 425 Pa. Super. 355, 365, 625 A.2d 642, 647-48 (1993), the Superior Court held that a step-grandparent is not the equivalent of a biological grandparent for purposes of this statute.

4. The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects the interest of parents in the care, custody and control of their children. *Troxel v. Granville,* 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed. 2d 49 (2000). Therefore, "so long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the state to inject itself into the private realm of the family to further question the ability of that parent to make the

In custody cases, a third party standing in loco parentis to the child has standing to seek full or partial custody of the child he has cared for. *D.N. v. V.B.,* 814 A.2d 750, 753 (Pa. Super. 2002).

"The phrase 'in loco parentis' refers to a person who puts [her]self in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of 'in loco parentis' embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties." *Bupp v. Bupp,* 718 A.2d 1278, 1281 (Pa. Super. 1998) (quoting *Commonwealth ex rel. Morgan v. Smith,* 429 Pa. 561, 565, 241 A.2d 531, 533 (1968)).

"The rights and liabilities arising out of an in loco parentis relationship are, as the words imply, exactly the same as between parent and child." *T.B. v. L.R.M.,* 567 Pa. 222, 229, 786 A.2d 913, 917 (2001).

In *J.A.L. v. E.P.H., supra,* the Superior Court stated:

"The in loco parentis basis for standing recognizes that the need to guard the family from intrusions by third parties and to protect the rights of the natural parent must be tempered by the paramount need to protect the child's best interest. Thus, while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture,

best decisions concerning the rearing of that parent's children." *Id.* at 68-69.

and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections." *Id.* at 88-89, 682 A.2d at 1319-20.

In this case, Grandmother can be granted standing, if at all, only as a third party who has stood in loco parentis to Amanda. Moreover, in loco parentis status cannot be created in defiance of the natural parents' wishes and the parent/child relationship. *Gradwell v. Strausser,* 416 Pa. Super. 118, 126, 610 A.2d 999, 1003 (1992).

In the present case, we are convinced that Grandmother has standing to participate as a party in these proceedings. For more than four years, Grandmother has assumed primary parental responsibility of Amanda in a family setting. Amanda has resided with Grandmother in her home and has been treated and raised as a daughter. During this time, Grandmother has provided Amanda with not only the basic necessities of life—food, shelter and clothing—but has also seen to her medical care, including braces and counseling for the abuse by Mother's brother, overseen her schooling, and, most importantly, stood in the shoes of the Mother. Grandmother's involvement in Amanda's life has been sustained, substantial and sincere.

Nor is the relationship which has developed one-sided: Amanda looks on Grandmother as a daughter does her mother, loves Grandmother as if she were her mother, and wants to remain with Grandmother. Over this same

time-period, Amanda has developed stable and happy relationships not only with Grandmother, but also with her classmates at school, and participates in both school and extracurricular activities.

Grandmother, unquestionably, has played a special role in Amanda's life, sufficient, we believe, to grant Grandmother standing. We also find that this status was created first by the consent, and later by the acquiescence, of the Mother.

Notwithstanding our determination that Grandmother has standing to participate in these proceedings, Grandmother is a third party subject to the standards applicable to third parties in evaluating and weighing and comparing the competing factors relevant to deciding the merits of a custody claim. See *Campbell v. Campbell, supra* (natural mother confused principles of standing with standards to be applied in deciding custody dispute). Whereas standing is a prerequisite to the exercise of a court's jurisdiction to hear a case, in custody disputes between a parent and a non-parent, the biological parent's prima facie right to custody has the effect of increasing the evidentiary burden on the non-parent seeking custody. *J.A.L.,* 453 Pa. Super. at 87, 682 A.2d at 1319. On this issue our Supreme Court stated:

"It is axiomatic that in custody disputes, 'the fundamental issue is the best interest of the child.' . . . In a custody contest between two biological parents, 'the burden of proof is shared equally by the contestants . . . .' . . . Yet, where the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced. In such instances, 'the parents have a

"prima facie right to custody," which will be forfeited only if "convincing reasons" appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the [biological] parents' side.' . . ." *Charles v. Stehlik,* 560 Pa. 334, 340, 744 A.2d 1255, 1258 (2000), *cert. denied,* 530 U.S. 1243, 120 S.Ct. 2689, 147 L.Ed.2d 961 (2000). (citations omitted)

This standard does not preclude awarding custody to a non-parent, but rather "simply instruct[s] the hearing judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy." *Ellerbe v. Hooks,* 490 Pa. at 368, 416 A.2d at 514. Under this standard, special weight and deference must be accorded to the parent-child relationship. *B.A. v. E.E. ex rel. C.E.,* 559 Pa. 545, 549 n.1, 741 A.2d 1227, 1229 n.1 (1999). At the same time, we note that a biological parent need not be proven to be unfit for a third party to prevail in a custody proceeding. *Charles v. Stehlik,* 560 Pa. at 342, 744 A.2d at 1259.

The difficult question that we have yet to decide is whether the best interests of Amanda will be better served by permitting her to continue to develop with Grandmother, with whom she has thrived and has been well cared for, or with her mother, who, while previously recognizing her inability to care for Amanda by placing her in the care of the Manns, has changed her life and is now capable of providing a home for Amanda, as well as for Amanda's sister, Brianne, and her brother, Jayson. Whether compelling and convincing reasons exist for Grandmother to retain primary physical custody of

Amanda is a question which we will address after the hearing on the merits has been concluded.

## CONCLUSION

In accordance with the foregoing, Mother's petition challenging Grandmother's standing to participate as a party in these proceedings will be denied.