J-A06015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.F. AND B.F., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| L.C. AND E.G., | |
| Appellees | No. 1373 WDA 2017 |

Appeal from the Order Entered August 22, 2017
In the Court of Common Pleas of Indiana County
Civil Division at No(s): 12752 CD 2015

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:                **FILED APRIL 03, 2018**

C.F. and B.F. (Maternal Grandparents) appeal from the order, dated August 21, 2017, and entered August 22, 2017, that *inter alia* granted the petition for special relief filed by E.G. (E.G. or Intervenor), awarding her primary physical custody and legal custody of the children, who are the subject of this custody litigation.  Additionally, the order directed that "[i]n accordance with [Pa.R.A.P.] 341(C)…, the [c]ourt determines that an immediate appeal of this [o]rder will facilitate a resolution of the entire case."  Order, 8/21/17. After review, we deny the motion to quash and affirm the order on appeal.

_____

* Retired Senior Judge assigned to the Superior Court.

In a prior appeal, this Court's memorandum provided a summary of the factual and procedural history of this case.

> N.C. (Mother) and F.C. (Father) were the biological parents of two children, M.C. (born in 2004) and N.C. (born in 2011) (collectively, Children). Mother died in 2012. After Mother's death, Father and E.G. began dating and eventually came to live together. Father died on December 18, 2015. On the same day, Maternal Grandparents filed a petition for emergency custody of Children, which was granted. On December 21, 2015, L.C. (Paternal Grandmother) filed a petition for emergency custody. By agreement, the December 18, 2015 order was vacated and Maternal Grandparents and Paternal Grandmother were provided equal shared legal and physical custody.

> On January 22, 2016, E.G. filed a petition for leave to intervene, arguing that she stood *in loco parentis* to Children. On February 12, 2016, Maternal Grandparents filed a complaint for custody requesting primary physical custody of Children.

> On April 4, 2016, the trial court granted E.G. permission to intervene, and on April 20, 2016, E.G. filed preliminary objections to Maternal Grandparents' complaint. On April 28, 2016, Maternal Grandparents filed an amended complaint for custody. In the amended complaint, Maternal Grandparents contended they have standing to seek primary physical and legal custody of Children pursuant to 23 Pa.C.S. § 5324(2).[1] They also averred they have standing to seek partial physical custody of Children pursuant to 23 Pa.C.S. § 5325(1).[2]

> > [1] That statue provides as follows. "The following individuals may file an action under this chapter for any form of physical custody or legal custody … (2) A person who stand *in loco parentis* to the child." 23 Pa.C.S. § 5324(2).

> > [2] That statue provides that grandparents may file for partial physical custody or supervised physical custody "where the parent of the child is deceased." 23 Pa.C.S. § 5325(1).

> E.G. again filed preliminary objections. Specifically, she argued that Maternal Grandparents did not have standing to

pursue custody pursuant to 23 Pa.C.S. § 5324(2) because they did not stand *in loco parentis* to Children. The trial court held a hearing on the preliminary objections, and on October 25, 2016, the trial court entered an order sustaining E.G.'s preliminary objections, concluding that Maternal Grandparents did not stand *in loco parentis* to Children and therefore could not pursue primary physical and legal custody pursuant to 23 Pa.C.S. § 5324(2).

***C.F. & B.F. v. L.C., E.G.***, No. 1713 WDA 2016, unpublished memorandum at

1-3 (Pa. Super. filed May 24, 2017) (***C.F. I***).

Maternal Grandparents filed an appeal to this Court from the October

2016 order. However, based upon the fact that the trial court had not included

the required language as directed by Pa.R.A.P. 341(c)[1] and because the order

_____

[1] The pertinent statutory language contained in Rule 341 states:

> **(b) Definition of final order**.—A final order is any order that:
>
> (1)  disposes of all claims and of all parties; or
>
> (2)  RESCINDED
>
> (3)  is entered as a final order pursuant to paragraph (c) of this rule.
>
> **(c) Determination of finality**.—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order.

Pa.R.A.P. 341(b), (c).

was not a final order resolving all custody claims between the parties, this Court quashed the appeal, *i.e.*, this Court did not have jurisdiction over the appeal.

Following the issuance of this Court's decision in *C.F. I* in May of 2017, the trial court scheduled a hearing on Intervenor's emergency petition for special relief for August 21, 2017. However, before the hearing was held, Maternal Grandparents filed three motions/petitions: (1) a motion to stay custody action, (2) a petition for expert custody evaluation, and (3) a petition to prohibit relocation. On the date of the scheduled hearing, the trial court issued the order presently on appeal. In that order, the court dismissed Maternal Grandparents' three motions/petitions. The order also granted Intervenor's petition for special relief, awarding primary physical and legal custody to Intervenor, E.G., as she is the only person determined to have standing. The order also granted partial custody rights to Maternal Grandparents and Paternal Grandmother. Additionally, the order provided that "an immediate appeal of this Order will facilitate a resolution of the entire case[,]" pursuant to Rule 341(c). Order, 8/21/17, at 2 ¶ 5. A motion for reconsideration was denied and the instant appeal followed.

Initially, we must resolve Intervenor's second motion to quash this appeal.[2] Intervenor contends that the August 21, 2017 order is not a final order and, therefore, is not appealable. She identifies this Court's docketing statement filed by Maternal Grandparents that acknowledges that the order appealed from is not a final order, but contends that Maternal Grandparents erroneously assert that permission to appeal was granted pursuant to Pa.R.A.P. 1311, which requires the appellant to petition the appellate court for permission to appeal. Although we agree with Intervenor that the procedure pursuant to Rule 1311 was not followed, Intervenor overlooks the trial court's statement in its August 21, 2017 order indicating that an immediate appeal will facilitate a resolution of the entire case under Pa.R.A.P. 341(c). The Notes following Rule 341 specifically state that "[p]aragraph (c) permits an immediate appeal from an order dismissing less than all claims or parties from a case only upon an express determination that an immediate appeal would facilitate resolution of the entire case." Obviously, the trial court made such a statement. Moreover, no requirement exists in connection with this rule that requires a party to seek permission from the appellate court to file an appeal. Therefore, we are compelled to deny Intervenor's second motion to quash.

_____

[2] Intervenor's first motion to quash was denied without prejudice to again raise the quashal request after the appeal was assigned to a merits panel. *See* Per Curiam Order, 12/29/17.

We now turn to Maternal Grandparents' four issues they raise on appeal:

1. Did the [t]rial [c]ourt err in refusing to allow any of the parties to this action to submit testimony (including that of the children) and/or other evidence with regards to their best interest and the custody factors at the August 21, 2017 hearing, resulting in an [o]rder that is not in the best interest of the minor children?

2. Did the [t]rial [c]ourt err in failing to consider the then-existing status quo and the second complaint for custody filed by [Maternal Grandparents] in November 2016, at which point in time they had been sharing custody of the minor children and discharging parental duties for a period in excess of six (6) months?[3]

3. Did the [t]rial [c]ourt err in refusing to consider Appellee/Intervenor's request for custody as a relocation in light of the fact that Appellee/Intervenor resides in another town and another school district from [Maternal Grandparents] and Appellee/Paternal Grandmother refusing to analyze any of the custody factors with regards to relocation as set forth in 23 P[a.]C.S.[] [§] 5337?

4. Did the [t]rial [c]ourt err in failing to consider any of the three (3) motions prepared by [Maternal Grandparents], despite the fact that it was conveyed by [c]ourt [a]dministration that these would be heard on August 21, 2017?

Maternal Grandparents' brief at 10.

We note our scope and standard of review. Appellants' challenge to the propriety of the trial court's order denying their motion for standing to file a custody complaint involves a question of law. Thus, our review is de novo and our scope is plenary.

*P.T. v. M.H.*, 955 A.2d 814, 817 (Pa. Super. 2008).

---

[3] The trial court docket does not contain any reference to a second complaint filed by Maternal Grandparents in November of 2016.

We have reviewed the certified record, the briefs of the parties, the applicable law, and both thorough, well-reasoned opinions authored by the Honorable Joseph A. Nickleach, Senior Judge of the Court of Common Pleas of Indiana County, one dated October 25, 2016, and the other dated October 18, 2017. We conclude that Judge Nickleach's opinions properly dispose of the standing issue in conjunction with the issues raised by Maternal Grandparents. Accordingly, we adopt the court's opinions as our own and affirm the order appealed from on that basis.

Motion to quash denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2018



C.F. and
B.F.,

Plaintiffs,

vs.

L.C.,

Defendant,

vs.

E.G.,

Intervenor.

IN THE COURT OF COMMON PLEAS
INDIANA COUNTY, PENNSYLVANIA

NO. 12752 CD 2015

2017 OCT 18 AM 8: 35
INDIANA COUNTY
PROTHONOTARY AND
CLERK OF COURTS

<u>MEMORANDUM PURSUANT TO P.A.R.P. 1925(a)(2)(ii)</u>

C.F. and B.F., (Maternal Grandparents), appeal this Court's Order dated August 21, 2017, wherein E.G.'s,(Intervenor's), Petition for Special Relief seeking primary physical and legal custody of the children, M.M.C. and N.A.C., (children), was granted and various motions and petitions filed by Maternal Grandparents were denied.

The basis for the Court's decision is found in this Court's Opinion and Order dated October 20, 2016, which held that Maternal Grandparents had no standing to seek primary physical or legal custody of the children. The Court determined that Maternal Grandparents' Motion to Stay this Custody Action, Petition to Prohibit Relocation and Petition for Expert Custody Evaluation should be dismissed because Maternal Grandparents lack standing to seek primary custody.

23 Pa.C.S.A. §5324 designates who may sue for physical or legal custody. Therefore, standing becomes a jurisdictional prerequisite to the action. *See, Grom v. Burgeon*, 672 A.2d 823, 824-825 (Pa. Super. 1996). The Court views the aforementioned motions as vehicles to pursue physical and legal custody. Since Maternal Grandparents had no standing to bring

1

Appendix B

these motions, they were dismissed. Since Intervenor was the only person in this case with standing due to the prior judicial determination that she stood in loco parentis, her Petition for Special Relief seeking primary physical and legal custody was granted.

Appellants, Maternal Grandparents, also claim that this Court erred in failing to recognize Maternal Grandparents in loco parentis status by virtue of their having shared physical custody since December 22, 2015. As stated in its Opinion, the Court believes that Maternal Grandparents had no standing to file the initial custody petition to begin with.

In the Court's view, Maternal Grandparents' action in securing physical and legal custody of the children, was done by illegitimate means. They had no contact with the children for a six (6) week period from mid-July until the end of August, 2015, when an issue arose between Maternal Grandparents and Father concerning the raising of the children. Then, three and a half (3½) months later, on December 18, 2015, the same day that Father died, Maternal Grandparents, without having standing to do so, presented a Petition for Emergency Custody and Court Order giving them legal and physical custody of the children. The Petition itself was filled out by the Prothonotary and the Petition and Order of Court were filed after the Prothonotary's Office was closed for the day. Moreover, there was no emergency necessitating such an immediate change of custody.

The Petition set forth by Maternal Grandparents failed to mention that the children were in custody of Father's fiancé, Intervenor, with whom they had been living as a family for over two (2) years. The Court believes these actions were disingenuous and were designed to secure physical custody when they had no standing to do so. Thus, their wrongful custody of the children should not be utilized to determine in loco parentis status.

> In order for a party to stand in loco parentis to a child, that
> party must first assume parental status through some legally

2

cognizable means. *The requirement that assumption of parental status be accomplished through legally cognizable means is absolutely essential, for it prevents persons who have gained physical possession of a minor child through illegitimate means from using the judicial system to legitimize their wrongful possession of the child.*

(Emphasis supplied), *In re Adoption of W.C.K.*, 2000 Pa. Super. 68 (1999).

Maternal Grandparents seem to claim that, because of their extended period of physical custody since December, 2015, they should be granted in loco parentis status. Again, as pointed out above, Maternal Grandparents cannot use the judicial system to legitimize their wrongful possession. Moreover, the extended period in this case was caused by Maternal Grandparents' filing of an interlocutory appeal, which stayed all proceedings in this Court for a period of eight (8) months.

In conclusion, the Court believes for the reasons set forth in its Opinion of October 20, 2016, that Maternal Grandparents had no standing to seek physical and legal custody under §5324 of the Custody Act and did not acquire standing by virtue of their illegitimate use of the judicial system to gain custody of the children.

Respectfully Submitted,

_____, S.J.
Joseph A. Nickleach, Senior Judge

Dated: *October 17, 2017*

3



C.F.
_____ and

B.F. _____,

Plaintiffs,

vs

L.C.
_____,

Defendant,

vs

E.G.
_____,

Intervenor.

: IN THE COURT OF COMMON PLEAS
: INDIANA COUNTY, PENNSYLVANIA
:
:
: NO. 12752 CD 2015
:
:
:
:
:
:
:
:
:

## OPINION AND ORDER OF COURT

NICKLEACH, S.J.

Before the Court for decision are Preliminary Objections filed by the Intervenor, E.G. _____, to an Amended Complaint for Custody filed by Plaintiffs, C.F. _____ B.F. (Maternal Grandparents) and _____ (C.F.+B.F.'s). The Preliminary Objections raise the issue of the _____ standing to seek primary physical custody of the children, M.C. _____ and N.C. _____

(children). Hearing on the issue was held on July 25, 2016. Briefs were subsequently filed and the case is now ready for decision.

## HISTORY

C.F. +B.F.

The case began on December 18, 2015, when the _____ who are the maternal grandparents, filed a Petition for Emergency Custody of the children.[1] The children's father died earlier that day. Their mother had previously died on June 7, 2012. There were no other allegations in the Petition. On the same day, December 18, 2015, the Petition was granted.

---

[1] It is noted that the wherefore clause of the Petition requests "the Court to grant Custody (or) Visitation (or) Partial Custody of the child to Petitioner." There was no designation as to which form of custody was sought.

1

On December 21, 2015, [L.C.], the paternal grandmother, filed a similar Petition for Emergency Custody with the same request as [C.F. + B.F.'s] petition. By agreement of the [C.F. + B.F.] and [L.C.], a Court Order was entered on December 22, 2015 wherein [C.F. + B.F.] and [L.C.] were to equally share legal and physical custody of the children. The Order was entered without prejudice to any party to file a Complaint for Custody. The Court's earlier Order of December 18, 2015 was then vacated.

On January 22, 2016, [E.G.] filed a Petition for Leave to Intervene alleging that she was the fiancé of [F.C.] (Father) and stood in loco parentis to the children. On April 4, 2016, the Honorable Carol Hanna, following a hearing on the Petition, permitted [E.G.] to intervene as a party based on in loco parentis status.

Meanwhile, on February 12, 2016, [B.F. + B.F.] filed a Complaint for Custody asking the Court to grant custody of the children to them. Having been granted permission to intervene, [E.G.] filed Preliminary Objections to [C.F. + B.F.'s] Complaint alleging that the [C.F. + B.F.] not only failed to plead facts establishing standing pursuant to Pa. R.C.P. 1915.3(e), but also lacked standing pursuant to 23 Pa. C.S. §5324(3)(iii). [C.F. + B.F.] then filed an Amended Complaint for Custody on April 28, 2016, this time alleging their standing by virtue of being in loco parentis to the children pursuant to 23 Pa. C.S. §5324(2). [2] On May 17, 2016, [E.G.] filed Preliminary Objections to Plaintiff's Amended Complaint for Custody again raising the issue of standing by alleging that [C.F. + B.F.] have failed to plead facts establishing in loco parentis standing, do not stand in loco parentis, and do not satisfy the requirements for standing pursuant to 23 Pa. C.S. §5324(2). [E.G.] requested the Court to limit [C.F. + B.F.'s] claim for custody to one for partial physical custody or supervised physical custody pursuant to 23 Pa. C.S. §5325.

---

[2] [C.F. + B.F.] also asserted they have standing to seek partial physical custody pursuant to Pa. C.S. §5325(a). This claim is recognized by [E.G.] in her Preliminary Objections to Plaintiff's Amended Complaint for Custody.

2

## FINDINGS OF FACT

1. Plaintiffs, *C.F.* ████████ and *B.F.* ████████████████, are individuals residing at 236 Marcoline Road, Indiana, Pa. They are the maternal grandparents of the children.

2. Defendant, *L.C.,* ████████████████, is an individual residing at 349 Ridge Ave., Indiana Pa. She is the paternal grandmother of the children.

3. The children are *M.C.* ████████████████, age 12, D.O.B. October ●, 2004 and *N.C.* ████████████, Age 4, D.O.B November ●, 2011.

4. *F.C.* ████████ (Father), now deceased, was the father of the children. He died on December 18, 2015.

5. *N.C.* ████████ (Mother), now deceased, was the mother of the children. She died on June 7, 2012.

6. The Intervenor, *E.G.* ████████████████, is an individual who resides at 436 Sunflower Lane, Homer City, Pa.

7. Following their marriage, Father and Mother lived in Virginia, where *M.C.* ████ was born on October ●, 2004. *B.F.* ████████ stayed with them in Virginia following *M.C.'s* ████ birth, helping to take care of the baby.

8. In late January, 2005, Father, Mother and *M.C.* ████ moved to Pennsylvania and began living with the *C.F. + B.F.* ████████

9. In June, 2005, Father returned to Virginia for (1) month to serve a jail sentence.

10. Upon his return in July, Father, Mother and *M.C.* ████████ stayed with *L.C.* ████ for (2) months.

11. In November, 2005, Father, Mother and *M.C.* ████████ moved into their own house at 795 Route 119, Indiana, Pa.

3

12. Father, Mother, *M.C.* and after his birth, *N.C.*, lived there together until Mother's death on June 7, 2012.

13. In the days immediately following Mother's death, *L.C.* lived with Father and the children taking care of the children as Father went through the grieving process.

14. In August, 2012, Father told *L.C.* he would take over household duties. However, *C.F. + B.F.* and *L.C.* each continued to help out with the grandchildren. They got *M.C.* ready for school and on the bus when Father left early for work.

15. In June, 2013, Father began a relationship with the Intervenor, *E.G.*.

16. At about this time, Father and the children moved to 206 Highland Drive, Homer City, Pa.

17. In July, 2013, Father and *E.G.* became engaged and in November, 2013, *E.G.* moved into the house at Highland Drive with Father and the children. There, they lived as a family from November 2013 until Father's death on December 18, 2015.

18. From their births until June 7, 2012, the children continuously resided with Father and Mother.

19. From Mother's death on June 7, 2012 until Father's death on December 18, 2015, the children continuously resided with Father.

20. During this period, except for a six (6) week span in the summer of 2015, *C.F. + B.F.* and *L.C.* had frequent interactions with their grandchildren, who sometimes spent overnights with them.

21. In the summer of 2015, *C.F. + B.F.* did not have contact with the children for approximately six (6) weeks because of a dispute that had arisen between them and Father and

4

*E.G.* ▮. The matter was subsequently resolved and the parties reconciled and ▮'s *C.F, + B.F.'s*

interaction resumed.

*M.C.'s*

22. During the entire period from ▮ birth until Father's death, Father exercised

parental control over his children, never relinquishing parental control to ▮ or to ▮. *C.F.+ B.F.* *L.C.*

23. Throughout this period, ▮ and ▮ acted as grandparents assisting Father *C.F. + B.F.* *L.C.*

and Mother and, after Mother's death Father, in times of need by assisting in taking care of

their grandchildren.

24. Within hours after Father's death on December 18, 2015 and without notice to any

other parties in interest, ▮ sought an Emergency Custody Order and without a hearing, *C.F.+ B.F.*

received emergency custody of the children.

*L.C.'s*

25. On December 21, 2015, following ▮ Petition for Emergency Custody, the

Emergency Custody Order of December 18, 2015 was vacated and physical and legal custody

was awarded to ▮ and ▮ jointly without prejudice to any party to file a Complaint *C.F. + B.F.* *L.C.*

for Custody.

26. Because she lived with Father and the children continuously from November, 2013

until Father's death on December 18, 2015 and apparently shared parental responsibilities

during that period, ▮ was held to be in loco parentis and was permitted to intervene in this *E.G.*

custody action.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties since all parties and the children reside in

Indiana County.

2. ▮ are grandparents to the children, ▮ and ▮. *C.F. + B.F.* *M.C.* *N.C.*

5

3. Under §5324 of the Custody Act, 23 Pa. C.S. §5324, standing to seek inter alia, primary physical custody is conferred upon (1) a parent of the child (2) a person who stands in loco parentis to the child or (3) a grandparent who is not in loco parentis to the child provided certain conditions are met.

4. *C.F. + B.F.* ▓▓▓▓ are not parents of the children, 23 Pa. C.S. §5324(1).

5. *C.F. + B.F.* ▓▓▓▓ are not in loco parentis to the children, 23 Pa. C.S. §5324(2).

6. *C.F. + B.F.* ▓▓▓▓ have not satisfied all three conditions required of a grandparent who is not in loco parentis, 23 Pa. C.S. §5324(3).

7. *C.F. + B.F.* ▓▓▓▓ do not have standing to seek primary physical custody of the children.

8. *E.G.'s* ▓▓▓▓ Preliminary Objections should be sustained insofar as *C.F. + B.F.'s* ▓▓▓▓ Complaint seeks primary physical and legal custody of the children.

## DISCUSSION

The Preliminary Objections in this case raise the issue of the *C.F. + B.F.'s* ▓▓▓▓ standing to seek primary physical custody of the children.

The Custody Act 23 Pa. C.S. §5324 sets forth the requirements for standing where primary and/or legal custody is sought:

§5324. Standing for any form of physical custody or legal custody.

The following individuals may file an action under this chapter for any form of physical custody or legal custody:
(1) A parent of the child
(2) A person who stands in loco parentis to the child
(3) A grandparent of the child who is not in loco parentis to the child:
　　(i) whose relationship with the child began either with the consent of a parent of the child or under a Court Order;
　　(ii) who assumes or is willing to assume responsibility for the child; and
　　(iii) when one of the following conditions is met:
　　　　(A) the child has been determined to be a dependent child under 42 Pa. C.S. Ch.63 (relating to juvenile matters);

6

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) the child has for a period of at least 12 consecutive months resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

The initial determination for the Court is whether the C.F.+B.F. stand in loco parentis to the children.

C.F.+B.F. aver three ways in which in loco parentis is established. They argue first that since they were awarded joint legal and physical custody by Court Order of December 22, 2015, and since that Order was not appealed, their standing was established. They rely primarily on Campbell v. Campbell, 448 Pa. Super. 640, 672 A.2d 835 (1996), for their position.

In Campbell, 672 A.2d 835, Mother and Father, an alcoholic, moved frequently during their marriage. They subsequently divorced. Mother and the children lived with grandparents for a time. She left the residence with the children and later asked the grandparents to come and get the children. Mother granted grandparents temporary legal and physical custody in February 1991. The children resided with grandparents from February, 1991 until August, 1991 when Mother took the children and moved to an undisclosed location. Upon locating Mother, grandparents sought partial custody. On March 23, 1994, pursuant to a negotiated agreement, an order was entered granting shared legal custody and partial physical custody. This order was never appealed. Subsequently, grandparents sought primary physical custody of the children. Mother raised the issue of their standing. In finding that grandparents had

7

standing the Court held that the prior Court Order which was not appealed clearly granted standing. Campbell, 672 A.2d 835.

I believe Campbell is distinguishable from the facts of the instant case. Here, the action was instituted by Petitions for Emergency Custody. No notice was given, no hearing was held, no considerations were given as to whether or not there were other parties in interest. In point of fact, a third party did exist in the Intervenor, ▓▓▓ *E.G.* who was known to ▓▓▓ *C.F.+B.F.* when they sought custody.

*C.F.+B.F.* ▓▓▓did not comply with the Rules of Civil Procedure in securing their Order of Custody. Pa. R.C.P. 1915.1 provides that all actions for legal and physical custody of minor children including habeas corpus proceedings are governed by these rules. Rule 1915.3(a) provides that an action shall be commenced by filing a verified Complaint. Rule 1915.3(e) requires that a grandparent not in loco parentis who is seeking physical and/or legal custody must set forth in the Complaint facts establishing their standing. Rule 1915.13 provides that at any time _after_ commencement of an action, the court may on application or on its own motion, grant interim or special relief, which may include temporary legal or physical custody. Since ▓▓▓ *C.F.+B.F.'s* procedure in obtaining custody did not comply with the rules, the granting of the order in and of itself, should not confer in loco parentis standing. Moreover, this order is not and was never intended to be a final order and should not afford in loco parentis standing. Finally, the issue of standing must be determined as of the initiation of the action in December, 2015. The issue of standing is not retroactive nor is it waivable. It is a jurisdictional prerequisite to the filing of the action, K.B.II v. C.B.F., 833 A2d 767, (2003):

> " [W]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to any action. It is well settled that the question of subject matter jurisdiction may be raised at

8

any time, by any party, or by the Court sua sponte." K.B.II v. C.B.F., 833 A2d 767.

*C.F.+B.F.*

████ also argue that because both parents are deceased, a relaxed standard for standing is to be applied in this case. They cite Kellogg v. Kellogg, 646, A2d 1246, 1249-50 (Pa. Super 1994), for the proposition that a clear and convincing showing that a sustained, substantial and sincere interest in the welfare of the child will establish standing. However, to quote Steelers coach, Mike Tomlin, who said it in a different context, "the standard is the standard". The legislature has set down the standard in §5324 of the Custody Act. There are no provisions in §5324 which mentions a different standard where both parents are deceased.[3]

> "A common law doctrine may not, after a statutory pronouncement on the same subject, continue to develop in a manner inconsistent with the statute. In cases of conflict between legislation and the common law, legislation will govern because it is the latest expression of the law." T.B. v. L.R.M. 786 A2d 913, 920-921 (Saylor J. dissenting).

By enacting §5324(3) the legislature did afford grandparents an alternative means of attaining standing when they do not meet in loco parentis status. To achieve standing under this provision, however, *C.F.+B.F.* ████ must satisfy the three conditions enumerated in the statute. Under the evidence presented, *C.F.+B.F.* ████ do not satisfy §5324(3)(iii). They fail to meet any of the three conditions set forth in that subsection. Consequently, *C.F.+B.F.* ████ can only achieve standing by proving they stood in loco parentis when this action was filed.

> "The phrase 'in loco parentis' refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of "in loco parentis" embodies two ideas: first, the assumption of parental status and, second, the discharge of parental duties. [citations omitted]. The rights and liabilities arising out of an "in loco parentis" relationship are, as the words imply, exactly the same as between parent and child. [citation omitted] The third party in this type of relationship, however, cannot place himself "in

---

[3] §5325(1) however, permits an action for partial physical custody and supervised physical custody where a parent is deceased. As stated earlier, ████ *E.G.* does not contest ████ *C.F.+B.F.'s* right to seek partial physical custody.

9

loco parentis" in defiance of the parents' wishes and the parent/child relationship. [citations omitted] T.B. v. L.R.M., 567 Pa. 222,228-229 (2001); 786 A2d 913, 916-917 (2001).

The evidence shows that the [C.F. + B.F.] ▮▮▮ had an involvement with the child, [M.C.] ▮▮▮ beginning with her birth. Father and Mother were living in Virginia at the time and Mrs. [B.F.] ▮▮▮ lived with them for several months assisting the parents in [M.C.'s] ▮▮▮ care. In late January, Mother and Father moved to Pennsylvania and from late January until June 2005 lived with the [C.F. + B.F.] ▮▮▮. Again, [B.F.] ▮▮▮ assisted Mother and Father with [M.C.] ▮▮▮ as both parents were employed. In June, 2005, Father returned to Virginia and upon his return in July, Father, Mother and [M.C.] ▮▮▮ stayed with [L.C.] ▮▮▮ until November 2005 when Father, Mother and [M.C.] ▮▮▮ moved into their own house. From November 2005 until Mother's death in June 2012, they and, after he was born, [N.C.] ▮▮▮, lived continuously in their home as a family. In June 2013 Father, [M.C.] ▮▮▮ and [N.C.] ▮▮▮ moved to Home, Pa. At about that time, Father began a relationship with [E.G.] ▮▮▮ and in July 2013 they became engaged. In November 2013, [E.G.] ▮▮▮ moved into Father's house and he, [M.C.] ▮▮▮, [N.C.] ▮▮▮ and [E.G.] ▮▮▮ lived continuously as a family until Father's death in December 2015.

[C.F. + B.F.] ▮▮▮ always had a relationship with the children from the time they were born until Father's death in December, 2015. [C.F. + B.F.] ▮▮▮ as well as [L.C.] ▮▮▮ assisted Mother and Father in helping the children. However, throughout the children's lives, Father and Mother, then Father alone and later with [E.G.] ▮▮▮ never intended that [C.F. + B.F.] ▮▮▮ would assume the duties and obligations of parents, never consented to the [C.F. + B.F.] ▮▮▮ assuming parental duties, and never relinquished their duties as parents to the children.

*B.F.*

herself, indicated that Mother and Father continued to exercise control over *M.C.'s* care when they lived with *C.F.+B.F.* *B.F.* also admitted that *M.C.* knew who her mother was and looked to Mother rather than grandmother as her parent.

After their departure from *C.F.+B.F.'s* home, Mother and Father remained in control of their children's lives. They continuously acted as parents of the children during their children's entire lives until Mother's death in 2012 and Father's death in 2015. *C.F.+B.F.* and *L.C.* continued to have involvement with the children even to the point of the children staying overnight at grandparents from time to time.

In late summer of 2015, *C.F.+B.F.* had a dispute with Father and *E.G.* and Father refused to have the children continue to spend overnights with *C.F.+B.F.* The dispute was resolved after six weeks and *C.F.+B.F.'s* involvement resumed.

Based on the evidence, the Court finds that although *C.F.+B.F.* have played a role in the children's lives they did so as grandparents and not as persons in loco parentis. They rendered assistance to Father and Mother frequently but never assumed the role of parents to the children. Father and Mother were always in control and never relinquished their parental responsibilities *C.F.+B.F.* were caretakers for the children when needed and other than a brief period in 2005, never resided with the children as part of a family unit.

In Argenio v. Fenton, 703 A2d. 1042 (Pa. Super. 1997), following Mother's death, Father resumed legal custody of the child but turned physical custody over to his brother and sister-in-law. Maternal grandmother filed a complaint for custody alleging in loco parentis status. The facts showed that the child, and the child's mother lived in the grandmother's household for the first year of the child's life. Grandmother cared for the child on a daily basis both in the presence and absence of Mother and arranged for a babysitter while Mother, a 16-

year-old, attended school or was otherwise away from the home. In holding that Grandmother lacked standing, the Court held that Grandmother's actions were that of a caretaker albeit a frequent one and not that of a parent.

Likewise, in D.G. v. D.B. and G.V., 91 A.3d 706 (Pa. Super. 2014), grandmother's role was held to be that of caretaker and therefore lacked standing to seek primary physical custody under the in loco parentis doctrine. In that case, Mother and the child resided together throughout the child's life. This included two periods with grandmother, totaling 12 months, during which grandmother provided financial assistance, did the cooking for Mother and the child, and bathed and cared for the child when Mother was away. When Mother and the child moved out of grandmother's residence in September, 2009 and through early 2013, grandmother had custody of the child every other weekend and one night per week. Grandmother did not often exercise the one night per week due to travel distance. At one point, Mother needed grandmother's assistance in transporting the child to medical appointments. The lower court found that grandmother's assistance was at Mother's request and with her acquiescence. The lower court concluded that grandmother had standing under the doctrine of in loco parentis to seek primary physical custody of the child. The Superior Court reversed and remanded finding that the lower court misapplied the law regarding in loco parentis and failed · to consider whether grandmother had standing under §5324(3)(iii)(B). In so holding the Superior Court stated:

> "While we agree with Grandmother that Argenio is factually dissimilar, we
> believe the legal analysis in that case is instructive. There the Court concluded
> that the grandmother's actions were consistent with helping her daughter
> through a period of need, but not with a de facto adoption of the child. Argenio,
> 703 A2nd at 1044. The same can be said here. Grandmother has played a large
> role in E.B.'s life, providing occasional shelter, meals, laundry, and
> transportation to and from medical appointments. As of the custody hearings,
> however, Mother and E.B. had not lived at Grandmother's residence for years.

12

Nothing in the record indicates that the parties ever intended for Mother and E.B. to reside permanently with Grandmother. In fact, Mother and E.B. stopped living with Grandmother in 2009 after Grandmother petitioned for welfare assistance for Mother in an attempt to get Mother and E.B. out on their own. Grandmother's efforts to assist Mother and E.B. in leaving her home are strongly inconsistent with an assumption of full parental responsibility. The periods of co-residence are more consistent with Grandmother assisting Mother and E.B. in a time of need than with Grandmother's informal adoption of E.B. The same can be said of the help Grandmother provided in transporting E.B. to his medical appointments after Mother lost her car. In summary, Grandmother's efforts on behalf of E.B. are substantial and commendable, but they are not consistent with an intent to assume all of the rights and responsibilities of parenthood. We therefore conclude that the trial court misapplied the law in finding that Grandmother stood in loco parentis to E.B. and therefore had standing to pursue this custody action." D.G. v. D.B. and G.V., 91 A.3d 706, 711-712.

In support of their argument for standing, *C.F.+B.F.* ~~cite~~ cite S. A. v. C.G.R., 856 A.2d 1248 (Pa. Super. 2004), J.F. v. D.B., 897 A.2d 1261 (Pa. Super. 2006), Liebner v. Simcox, 834 A.2d 606 (Pa. Super. 2003), J.A.L. v. E.P.H., 682 A2d 1314 (Pa. Super. 1996), T.B. v. L.R.M. 786 A.2d 913 (Pa. Super. 2001), Cardamom v. Lashoff, 659 A.2d 575 (Pa. Super. 1995), Bupp v. Bupp, 718 A.2d 1278 (Pa. Super. 1998) and McDonel v. Sohn, 762 A.2d 1278 (Pa. Super. 1998). I have examined those cases and find them to be distinguishable from Argenio, supra and D.G., supra which I hold to be controlling in this case.

Based on the foregoing, I conclude that *C.F.+B.F.* ~~that~~ are not in loco parentis to the children and therefor have no standing to seek primary physical custody under §5324(2).

In passing the Custody Act, specifically §5324(3), the legislature provided a standard for grandparents who are not in loco parentis to be able to seek primary physical and legal custody. That section enumerates the conditions in which a grandparent who is not in loco

13

parentis may nevertheless seek primary custody. I have examined the statute and find that
C.F. & B.F.
~~have~~ have failed to meet any of the conditions set forth in §5324(3)(iii).[4]

An appropriate Order will be entered.

---

[4] It is interesting to note that §5324(3)(iii)(C) implies that a residency of 12 consecutive months with the grandparents is not in and of itself sufficient to satisfy condition (C) under §5324(3)(iii).